MONTREVILLE FITTS *et al.*

*v.*

NANCY DAVIS *et al.*

1. MORTGAGE — *lien — notice.* Where a party sells real estate, and takes a mortgage on the premises to secure the purchase money, and it is recorded, it becomes a lien and notice of the fact; and a third person recovering a judgment against the mortgagor, in the Circuit Court, acquires a lien on the premises, subject to the mortgage, which is entitled to priority in satisfaction.

2. SAME — *reconveyance by mortgagor.* Where a mortgagor, under such circumstances, reconveys the premises to the mortgagee and thus cancels the mortgage debt, the lien of the judgment creditor is not thereby destroyed, but he may, after selling under his judgment, and acquiring title to the equity of redemption, redeem the premises by paying the mortgage debt and interest. And when the judgment debtor has died, his administrator occupies the same relation to the premises.

3. SAME — *equity of redemption.* A mortgagee by receiving a conveyance of the premises from the mortgagor does not thereby lose his lien, nor is it postponed to a junior incumbrance by judgment. If the judgment creditor or his representatives, by a sale under the judgment, acquires the equity of redemption, it remains subject to the payment of the mortgage debt.

4. JUDGMENT — *lien — execution.* Where a plaintiff recovers a judgment and dies, and no execution is issued for more than a year, the lien is lost as against a mortgagor or other person purchasing the equity of redemption. The lien of a judgment is not lost by the death of a plaintiff, but, to continue it beyond a year from the last day of the term at which it was rendered, the administrator should file a copy of his letters in the clerk's office, and sue out execution, as authorized by the statute. A sale on an execution, first sued out after the expiration of the year, confers no title as against the mortgagee.

5. SHERIFF'S DEED — *cloud on title.* Such a sheriff's deed, although incompetent to convey title, is such a cloud upon the title of the owner, as will warrant a court of equity in entertaining a bill for its removal.

WRIT OF ERROR to the Circuit Court of the county of Williamson; the Hon. WILLIAM J. ALLEN, Judge, presiding.

The facts of the case are stated in the opinion of the court.

Messrs. TANNER & CASEY, for the plaintiff in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was a suit in chancery, brought by Montreville Fitts and Wiley Marvell, in the Williamson Circuit Court, against Nancy Davis, administratrix, and Thomas D. Davis, administrator, of the estate of John F. Davis, deceased, and John B. Tanner, for a strict foreclosure of a mortgage, or for an account and a sale of the mortgaged premises, to satisfy a debt; also to vacate and set aside a sale of the premises made by the sheriff of Williamson county, in favor of defendants, on an execution sued out by them, on a judgment in favor of their intestate.

The bill alleges, that, on the 2d day of April, 1855, complainants conveyed to Tanner the fee in eighty acres of land on which there was a steam grist-and saw-mill, for the sum of $1,800.90, and took the promissory note of Tanner, payable one year after date, for the purchase money; and, to secure the payment of the same, Tanner executed a mortgage to them on the premises, which was duly recorded on the 6th day of April, 1855. That, on the 24th day of that month, John F. Davis, since deceased, recovered a judgment in the Circuit Court against Tanner for the sum of $193.22. That Davis subsequently died intestate, and letters of administration were granted, on the 14th day of August, 1855, to Nancy and Thomas D. Davis; and, on the 17th day of January, 1857, they caused an execution to issue on the judgment, which was levied upon the premises in controversy, which were sold thereunder, and they became the purchasers.

The bill charges that the Davises are fraudulently setting up a claim of title to the premises by virtue of that sale; that, after the mortgage was executed and before the purchase money became due, on the 15th day of June, 1855, complainants, at the request of Tanner, surrendered to him the note, and he

reconveyed to them the premises in fee, which was the only means by which the mortgage was ever paid or discharged; that the land was not worth the amount of the note when it was surrendered; and that Tanner was then wholly insolvent. The bill prays that the sale made by the sheriff to the Davises be set aside, or that the mortgage premises be sold, or that a strict foreclosure be had, and the title vested in complainants.

The answer admits that Tanner purchased the land as charged in the bill, and for the consideration named; that his deed was recorded on the 16th of January, 1857; also, that he executed the mortgage as charged, but denies that Tanner made default in paying the mortgage debt, and that he, for a sum of money not named in the answer, conveyed the premises in fee to complainants, Davises; that the legal estate was vested in complainants, but insists that it was in Tanner, for the reason that he and complainants canceled the mortgage, and he reconveyed the property on the 14th day of June, 1855. They admit that John F. Davis recovered the judgment on the 14th of April, 1855, against Tanner, and that the land was sold under it, as alleged. They deny all fraud as charged.

Exceptions were filed to the answer, but, so far as we can discover from the record, they were never disposed of by the court. Afterward, defendants filed a demurrer to the bill, which the court sustained, and rendered a decree dismissing the bill. Complainants bring the case to this court on a writ of error, and ask a reversal of the decree.

There is no pretense that the transaction between plaintiffs in error and Tanner was tainted with fraud. The transaction, then, appearing to be *bona fide*, the question presents itself, what are the rights of the parties? When plaintiffs in error took the mortgage and had it recorded, it not only became a lien, but notice of the lien to the whole world. It thereby became perfect, and prior to the lien of Davis' judgment. Being for the purchase money, and Davis being chargeable with notice when he obtained his judgment, it became a prior lien to his, and was entitled to priority in satisfaction, and this priority still continues, unless plaintiffs in error have done

some act which has postponed or destroyed their lien. And the only act which seems to be relied upon for that purpose is the reconveyance by Tanner, and the cancellation of the mortgage and note. When Davis obtained his judgment, it undoubtedly created a lien which attached to the equity of redemption in Tanner. And when he conveyed to plaintiffs in error it is equally true that plaintiffs in error took the equity of redemption, subject to that lien; but the lien of the judgment was subordinate to the mortgage, and Davis could only sell the equity of redemption, and, if he had acquired a title by sheriff's sale, to have rendered it availing he would have been compelled to redeem from the mortgage. And if the administrators of his estate perfected the lien by their sheriff's sale and deed, then they occupy the same relation to the premises, unless the mortgage has been paid by Tanner.

There is no pretense that Tanner ever paid a dollar on the mortgage debt, or even a dollar's worth of any thing but the mortgaged premises. And plaintiffs in error having the lien on the premises to secure the payment of the debt for the purchase money, they did not waive, satisfy or discharge their lien by taking a conveyance of the equity of redemption. They previously held the mortgage to secure the debt, but afterward they held the land, in place of the debt, which was satisfied. If the equity of redemption came to them burdened with a lien junior to the lien of the mortgage, they still held the land with their prior preferred lien, notwithstanding the satisfaction of the debt by taking the equity of redemption. If defendants in error, therefore, have acquired Tanner's equity of redemption by their sheriff's sale, still it is subject to the payment of the mortgage debt. Had Tanner paid the mortgage debt with money or other property, then it would have been otherwise.

But the question still remains to be determined, whether defendants in error preserved their lien. The judgment was rendered in April, 1855, and the execution was sued out on the 17th day of January, 1857, nearly twenty-one months afterward. And we find nothing in the record to show that an execution had been previously issued on the judgment. The

first section of the chapter entitled "Judgments and executions," declares that any judgment rendered in the Circuit Court shall be a lien on the real estate of the debtor for seven years after the last day of the term of the court at which it was rendered; provided an execution be issued thereon within one year on such judgment. The fortieth section of the same chapter declares, that the collection of judgments in courts of record shall not be hindered or delayed by the death of the plaintiff, but the executor or administrator may cause the letters testamentary or of administration to be recorded in the court in which the judgment exists; after which execution is authorized to issue and proceedings to be had in the name of the executor or administrator. The forty-first section declares that the lien created by law on property shall not abate by reason of the death of the plaintiff.

In this case there is nothing to show, that the lien was preserved by issuing an execution within a year after the judgment was rendered. There was nothing to prevent such a proceeding, as the administrators were expressly authorized to act. If such an execution was not sued out within the year, then the lien was gone, and the subsequent sale under execution conferred no title upon the purchaser. And if the lien of the judgment was thus permitted to expire, plaintiffs in error, having purchased the equity of redemption, became the owners free from the incumbrance of the judgment lien.

But, if an execution was issued within the year, then defendants in error became, by their purchase, the owners of the equity of redemption, and have the right to become the absolute owners of the property by paying the amount of the mortgage debt, with interest. And until foreclosed, they may exercise that right. If they are the owners of the equity of redemption, plaintiffs in error have the right to foreclose and have their debt paid or the equity of redemption barred. Again, this sheriff's deed forms such a cloud upon the title of plaintiffs in error, even if defendants in error have no right in the property, as would warrant a court of equity in entertaining jurisdiction to remove it. Then the court should have

retained the bill for that purpose, and if on the trial it appeared they owned the equity of redemption, the chancellor should have foreclosed the mortgage. The decree of the court below must be reversed and the cause remanded.

*Decree reversed.*