JAMES M. LOWMAN

*v.*

GEORGE A. LOWMAN *et al.*

*Filed at Ottawa November 13, 1886.*

1. MERGER—*where the entire estate is united in a mortgagee—whether the mortgage will still be kept alive.* Although the parties may have undertaken to discharge a mortgage upon the uniting of the estates of the mortgagor and mortgagee in the latter, the mortgage will still be upheld, in equity, as a source of title, when it is for the interest of the mortgagee, by reason of some intervening title or incumbrance, that it should not be regarded as merged.

2. It will be presumed, as matter of law, that the mortgagee must have intended to keep his mortgage alive, when it was essential to his security against an intervening title or incumbrance. And this presumption applies, although the parties, through ignorance of such intervening title or incumbrance, or through inadvertence, have actually discharged the mortgage of record, and canceled the notes.

3. So where a mortgagee, shortly after the maturity of the debt, took a deed from the mortgagor of the mortgaged premises, the mortgagor being insolvent and the premises not being equal in value to the debt, and entered satisfaction of his mortgage upon the record thereof, under the belief of the payment and discharge of a junior mortgage, it was *held*, on bill to foreclose the junior mortgage, that in order to protect the first mortgagee and his grantee, the prior mortgage would be kept alive and enforced.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Stark county; the Hon. T. M. SHAW, Judge, presiding.

Mr. M. SHALLENBERGER, and Mr. B. F. THOMPSON, for the appellant.

Mr. JAMES H. MILLER, for the appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is a bill in chancery, filed by appellant against appellees, on August 18, 1884, in the circuit court of Stark county, to foreclose a mortgage, dated April 1, 1873, and recorded April 16, 1873, upon the west half of lots 2 and 3 in block 14 in Toulon, executed by George A. Lowman to Branson Lowman, to secure a note for $400, dated April 1, 1873, payable three years after date with interest at ten per cent, made by George A. Lowman and payable to the order of Branson Lowman, and by the latter indorsed to appellant.

Previously, George A. Lowman and William Lowman had executed their note for $5000, dated July 26, 1872, drawing ten per cent interest, payable two years after date to the order of Samuel Burge & Co., composed of Samuel Burge and David J. Walker, and, to secure the same, had executed a mortgage, dated July 26, 1872, and recorded on July 26, 1872, to Burge and Walker, composing said firm, upon certain land, owned by William Lowman, and also upon said west half of lots 2 and 3, owned by George A. Lowman. David J. Walker, who only had an interest in the profits of the firm, has no interest in the note and mortgage, last described.

On September 10, 1874, George A. Lowman and wife made a deed, dated as of that day, to Samuel Burge, conveying the west half of lots 2 and 3, in part payment of the $5000 mortgage, and a credit of $2000 was thereupon indorsed upon the note for $5000. On February 1, 1881, a release of the mortgage for $5000, signed by "Sam'l Burge & Co.," was written upon the margin of the record thereof in the recorder's office. Burge went into possession of the lots in the fall of 1874, and resided upon them until September 25, 1882, when he sold and conveyed them to Hopkins Shivvers for $1500.

Upon a trial of the cause, the circuit court entered a decree, dismissing the bill, and, the Appellate Court having affirmed that decree, appellant brings the case before us by appeal from the Appellate Court.

It is claimed by appellees, that the mortgage, made on April 1, 1873, and sought to be foreclosed, has been paid. Branson Lowman and George A. Lowman had been partners under the firm name of B. & G. A. Lowman, and had ceased doing business by selling out to one Nicholas. Branson died in Nebraska March 13, 1885. George A. Lowman swears, that, shortly before September 1, 1874, he turned over to Branson Lowman all his interest in the notes, books and accounts of the old firm,-and that, in consideration of such transfer, Branson agreed to release the mortgage; that he told Branson of his intention to deed the property to Burge, and Branson said "all right," and promised to have the mortgage released. This testimony is not directly contradicted by any other evidence in the record, and there are many circumstances, which tend to confirm its truth.

During nine years after the note for $400 was given, Branson Lowman lived in Toulon. George A. Lowman also lived there, and at a place, not distant more than fifty miles from Toulon, during the same period. Branson made no demand at any time, during these nine years, for the payment of the note. In the spring of 1882 he moved to Hastings, Nebraska.

In the winter of 1883-84, appellant, who is a son of Branson
Lowman, and was a clerk for B. & G. A. Lowman, while
they were in business, and assisted in collecting their ac-
counts, after they quit business, went to Nebraska to see his
father. Shortly after his return, the note for $400 was for-
warded to him from Nebraska. He found the mortgage in
the recorder's office in 1884, where Branson Lowman had suf-
fered it to remain for eleven years after its execution, and
eight years after its maturity. Appellant claims to be the
owner of the note by assignment from his father, but he ad-
mits that such assignment was not made until the winter of
1883-84, seven or eight years after the maturity of the note.

But, even if the proof of payment is not sufficient to over-
come the presumption of non-payment, which arises from the
possession of the note and mortgage by the appellant, there
is another reason, why it would be inequitable to allow appel-
lant to enforce the mortgage, as against Shivvers and his
grantor, Burge. In order to protect the rights of the latter,
equity will keep alive the mortgage for $5000, notwithstand-
ing the apparent merger, which might appear, from the
records, to have taken place.

In September 1874, shortly after the mortgage for $5000
became due, the makers of that mortgage, William and George
A. Lowman, were both insolvent. The property covered by
the mortgage—both the lots, owned by George A. Lowman,
and the land, owned by William Lowman—was worth from
$1500 to $2000 less than the amount due. For these reasons,
Burge did not desire to go to the expense of foreclosing, and
accordingly accepted a deed of the lots to himself from George
A. Lowman, one of the mortgagors. "A mortgagee may pro-
cure a conveyance from the mortgagor without intending to
merge the lien of his mortgage. It may be of great import-
ance to him to be permitted, for the protection of his title, to
keep his mortgage alive, and to assert it in a court of equity,
if the necessity shall arise. Where a greater and less estate

meet in the same person, a merger does not necessarily follow. That will depend upon the intent and the interest of the parties, and if a court perceives it is necessary to the ends of justice, that the two estates should be kept alive, it will so treat them. Thus, if a mortgage is the eldest lien, and is for an amount, exceeding the value of the premises, and the mortgagee, to avoid the expense of foreclosure, takes a conveyance from the mortgagor, a court of equity would not permit the mortgaged premises to be swept away from him by a junior judgment creditor" (or a junior mortgagee) "without payment of the" (prior) "mortgage, under the pretence, that its lien had been lost by merger." *Edgerton et al.* v. *Young et al.* 43 Ill. 464. To the same effect are *Fitts* v. *Davis*, 42 Ill. 391; *Shaver* v. *Williams*, 87 id. 469; *Worcester National Bank* v. *Cheney*, id. 615; 4 Kent's Com. 102; 1 Jones on Mortgages, sec. 873.

The evidence, in the case at bar, shows, that Burge never did surrender the note and mortgage to George A. and William Lowman, but still had them in his possession, after appellant's bill had been filed. It also appears, that, in the fall of 1882, Burge wrote a letter to Branson Lowman, stating that he found the junior mortgage for $400 still unsatisfied on the records, and desired to have a release of it forwarded, in order to avoid expense, as he had sold the lots to Shivvers, but, at the same time, speaking of his own mortgage for $5000, as a prior lien, and expressing his intention to foreclose it, if necessary, to cut off Lowman's lien.

"Even when the parties have undertaken to discharge the mortgage upon the uniting of the estates of the mortgagor and mortgagee in the latter, it will still be upheld as a source of title whenever it is for his interest, by reason of some intervening title or other cause, that it should not be regarded as merged. It is presumed, as matter of law, that the party must have intended to keep on foot his mortgage title, when it was essential to his security against an intervening title,

or for other purposes of security; and this presumption applies, although the parties, through ignorance of such intervening title, or through inadvertence, have actually discharged the mortgage and cancelled the notes." 1 Jones on Mortgages, sec. 873; *Young* v. *Hill*, 31 N. J. Eq. 429; *Stanton* v. *Thompson*, 49 N. H. 272.

Without further discussion, we think, that the case of *Richardson* v. *Hockenhull*, 85 Ill. 124, is decisive of the case at bar. The facts there are similar to the facts here, and the principles, there announced, must control in the present case.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*