THOMAS B. BOWLING, *as Sheriff of Wyandotte County, et al.,* v. ROBERT GARRETT *et al.*

1. MECHANIC'S LIEN — *Conveyance of Property to Lienor — Merger.* Whenever the holder of a mechanic's lien acquires the title to the property upon which the mechanic's lien exists, by a conveyance thereof from the owner, and not by a foreclosure in the courts, though that would be equally good, the mechanic's lien will not be so merged in the legal title, or be so extinguished or destroyed, that a judgment subsequently rendered in favor of a third person against such owner, but rendered at a term of the court commenced before the conveyance was made, and in an action pending at the beginning of the term, would create a judgment lien prior or superior to the mechanic's lien, or would authorize the property to be sold on an execution issued on such judgment, free and clear from such mechanic's lien.

2. EXECUTION — *Sale, not Free from Mortgage Lien.* And in such a case, where a part of the consideration for the conveyance by the owner to the holder of the mechanic's lien was that the holder of the mechanic's lien should pay and satisfy certain mortgages then existing upon the real estate, a portion of the amount of which mortgages he did pay, the property could not properly be sold on such execution free and clear from such mortgages.

3. JUDGMENT CREDITORS — *Execution Sale — Injunction.* In such a case, the judgment creditor has the right to have the property sold upon execution to satisfy his judgment, provided the property is levied upon, appraised, advertised for sale and sold subject to all the rights of the holder of the mechanic's lien and purchaser, founded upon such mechanic's lien and the mortgage liens; but if the judg-

ment creditor has the land levied upon, appraised and advertised for sale without reference to the mechanic's lien or the mortgage liens, injunction against such judgment creditor and the sheriff will be a proper remedy to protect the rights of such mechanic's lien holder and purchaser and to enjoin the sale.

### *Error from Wyandotte District Court.*

ACTION by *Garrett* and another against *Bowling,* as sheriff, and the *Badger Lumber Company,* to enjoin defendants from selling certain land on execution. Judgment for plaintiffs, at the December term, 1889. The defendants bring the case to this court. The facts are stated in the opinion.

*Hutchings & Keplinger,* for plaintiffs in error:

The whole controversy resolves itself into this: Can a defendant, by agreement with an outside party, deprive a plaintiff of his statutory right to have a judgment rendered during the term become a lien as of the first day of the term upon real estate owned by said defendant at the beginning of the term? The question is not whether a lien, conceded to be held by plaintiff, has priority over the interest which we freely concede to be held by defendants. If we have a lien, our right to proceed with the sale would not be questioned; but the question is whether we have any lien at all, notwithstanding the statutory provision referred to.

Equity has no concern with this controversy. At the beginning of the term Cox owned the land, and he owed plaintiff in error, and he was also indebted to defendants in error. He was under precisely the same legal and moral obligation to pay the one as the other. As between these creditors, equity looked on with indifference. Whatever priority of right either may have to an appropriation of the property owned by Cox at the beginning of the term depends exclusively upon the statute. Both parties are relying upon a strict statutory right, and equity will leave the parties where the statute leaves them. The priority of right which defendants had by virtue of their lien at the beginning of the term was the creature of the statute. The right to the lien "did not

exist at common law. The statute which creates it provides for the manner of its enforcement. The liability and the remedy were created by the same statute. This being so, the remedy provided is exclusive of all others. Where the provision for the liability is coupled with a provision for a special remedy, that remedy alone must be employed." *Pollard v. Bailey*, 20 Wall. 526. See, also, *Burke v. Wheat*, 22 Kas. 722; Phil. Mech. Liens (2d ed.), §§ 2a, 489, 490; *Jenny v. Buel*, 55 Ala. 408. We invoke in our behalf the principles enunciated in these decisions.

Unless these authorities are overruled or ignored, they are conclusive of this controversy. The same act which gave defendants a lien provided a remedy for its enforcement. That remedy was a proceeding in court. Unless the lien culminates in the judgment of the particular court named in the act, and is followed by a judicial sale, confirmed by such court, the lien becomes as though it had never existed. An agreement between the lien claimant and the owner of the premises, made outside of court, cannot be made to take the place of the foreclosure proceedings provided for in the statute.

The language of the statute allowing plaintiff's lien to attach as of the first day of the term is absolute. The judiciary cannot interpolate exceptions. On the 5th of June it was wholly uncertain what course would be taken by plaintiff. It was certain, however, that if plaintiff should get a judgment during that term, the lien of such judgment would attach to the land as of June 5. One who has an action pending at the beginning of the term has precisely the same footing with respect to a lien as has the material man who has furnished material but has not yet filed his statement. Whoever thereafter acquires an interest is chargeable with notice of and is bound by a lien which attaches as of a prior date. A mechanic's lien "is a limited privilege, arising in positive enactment. . . . Any essential departure from its directions will be fatal to those who attempt to enforce it. In this strict adherence to the requirement of the statute

there is deemed to be no inequity, as the party claims to fasten an unusual right upon the land of another, with priority over other creditors." Phil. Mech. Liens (2d ed.), § 11. See, also, 50 N. Y. 362; Phil. Mech. Liens, §§ 1, 15; 2 Jones, Liens, §§ 1184, 1555.

The statute of Kansas provides that the lien shall be enforced by civil action in the district court, "which action shall be brought within one year" from the completion of the building. Code, § 633. That the year has expired and no such action has been prosecuted, is shown by the petition. An examination of the nature of a mechanic's lien in Kansas will show that this is fatal to the lien. The act requires that a verified statement of the claim to a lien shall be filed within four months after the completion of the building, and that a suit to foreclose shall be brought within one year after such completion. One step is as necessary as the other, and a failure to take one is as fatal as a failure to take the other. The lien itself is not created by filing the statement; it exists before, and is created at the time the material is furnished; the statement is filed not to create but to preserve the lien. *Weaver v. Sells*, 10 Kas. 619; 2 Jones, Liens, § 1389.

That the failure to bring suit to foreclose the lien by judicial proceedings, as required by the statute, works a forfeiture of the lien, is well settled by the authorities. *Wagar v. Briscoe*, 38 Mich. 587. See, also, *Benton v. Wickwire*, 54 N. Y. 266; 2 Jones, Liens, § 1184; *Cole v. Colby*, 57 N. H. 100; *Burbank v. Wright*, 47 N. W. Rep. 162; Phil. Mech. Liens, § 2; *Emerson v. Grainey*, 7 So. Rep. 526; 2 Jones, Liens, §§ 1261, 1564, note; Pom. Eq., § 1269.

That the lien lapses by failure to bring a suit within the time required by statute, is shown by a great many decisions. 2 Jones, Liens, § 1564; 1 Phil. Liens, §§ 266, 322.

The provision of the statute requiring suit to be brought within a limited time is for the protection of other lien holders, and they may take advantage of any failure to comply with it. Phil. Liens, §§ 332, 333, 334, and cases cited in notes; *Crow v. Nagle*, 86 Ill. 437; *Rice v. Simpson*, 30 Kas.

28; *Dumphy v. Riddle,* 86 Ill. 22; *Perry v. Conroy,* 22 Kas. 716.

Such interest as defendants have does not antedate the conveyance to them, while the lien of plaintiff's judgment dates back two days earlier; from which it follows, not only that plaintiff has a lien, but that such lien antedates any interest which defendants have by virtue of their deed.

Our right to proceed does not depend upon the priority of our lien, but upon its existence. We have the right to proceed with a sale and purchase the property. Even though it were true that if we had done so it would still be subject to the payment of the amount due on the defunct lien, we would have the right to pay off such claim, in which event we would own the land. Should we do so now we would be in no way benefited, because defendants would still own the land. Unless the conveyance be held to have the effect of an absolute foreclosure in a proceeding to which we were parties, we have the right to proceed with the sale.

*McGrew & Watson,* for defendants in error:

The levy was made by the sheriff upon the property in controversy without regard to any incumbrances thereon or interest therein of these defendants. Such levy was clearly contrary to chapter 177, Laws of 1887, and the sale attempted to be made thereunder was properly enjoined at the instance of defendants in error, for the reason that if said defendants occupy the worst possible position claimed for them by opposing counsel, they are nevertheless entitled to be substituted or subrogated to the mortgagee's rights in and to the mortgage security, for any and all amounts by them paid in reduction of the indebtedness secured by the mortgages upon the property antedating the pretended judgment lien of the Badger Lumber Company. *Muir v. Berkshire,* 52 Ind. 149; *Ellsworth v. Lockwood,* 42 N. Y. 89. *Cobb v. Dwyer,* 69 Me. 494, 498; *Yaple v. Stephens,* 36 Kas. 688; 1 Jones, Mortgages, § 874, *et seq.*; Boone, Mortgages, §§ 135, 136; Pom. Eq.

Jur., § 1212; *Crippen v. Chappel*, 35 Kas. 495, and cases therein cited.

The controlling inquiry in this case, as we view it, is, did such a merger of defendants' mechanic's lien and the legal title to the property take place as to render the lien and interest of defendants subordinate to the intervening judgment lien? A solution of this question involves numerous principles of law, which we shall discuss as briefly and as nearly in their order as possible.

Counsel for plaintiffs in error contend that equity has no jurisdiction over or concerning mechanics' liens, and will not recognize or entertain them in any equitable proceeding. A careful reading of the brief and of the authorities cited therein discloses the fact that counsel have confounded the enforcement or foreclosure proceedings in mechanics' lien cases with equitable jurisdiction. That mechanics' liens can be enforced or foreclosed only by strict adherence to the statutory method of procedure relating thereto, we readily concede, and the authorities cited go to that extent and no further; but equity frequently takes cognizance of mechanics' liens, and protects them when once in existence; the enforcement of them is not a part of their existence, but, on the contrary, the statute prescribes what is necessary to do to create a mechanic's lien and the time when it becomes a valid and existing one, and a vested right, and independently thereof prescribes the method of its enforcement, by an action brought in conformity with the rules prescribed by the code, as to which code all distinctions between law and equity have been expressly abolished. The distinction here contended for between the existence of a mechanic's lien and the method of its enforcement has frequently been recognized by this court, and is recognized in the very case of *Perry v. Conroy*, 22 Kas. 716, cited by counsel in support of their position.

A mechanic's lien, without reference to its enforcement, becomes a vested right and an interest in property which the legislature cannot take away. *Weaver v. Sells*, 10 Kas. 609; *Warden v. Sabins*, 36 id. 165.

Equity recognizes mechanics' liens and protects them, and applies equitable doctrines thereto. *Hall v. Hinckley*, 32 Wis. 362; *Garskill v. Davis*, 53 Ga. 645; *Board of Education v. Scoville*, 13 Kas. 17; Phil. Mech. Liens (2d ed.), § 257, *et seq.*, and numerous cases therein cited. See, also, Phil. Mech. Liens (2d ed.), § 11, and cases there cited; *Case of John Thompson*, 2 Browne (Pa.), 297; *Shields v. Keys*, 24 Iowa, 298; *Goodman v. White*, 26 Conn. 317; *Ritter v. Stevenson*, 7 Cal. 388; *Donahy v. Clapp*, 12 Cush. (Mass.) 440; *Rogers v. Dickey*, 6 Ill. 636; *Hill v. L. C. & M. Rld. Co.*, 11 Wis. 214.

Receiving a conveyance of real estate as part payment of a claim for erecting buildings thereon is not a waiver of the lien for the residue, any more than the acceptance of money as part payment would be. *Bayard v. McGraw*, 1 Bradw. (Ill.) 134.

Where a party built a number of houses and was paid full value for a part of the number, and released from his mechanic's lien those for which he was so paid, it was held that there was no waiver of his lien upon the remainder. *Hall v. Sheehan*, 69 N. Y. 618.

"A dismissal of proceedings to enforce a lien is not to be confounded with its discharge or abandonment." Phil. Mech. Liens, § 295.

If the holder of a mechanic's lien acquires the legal title to the property, the lien is not merged, so as to be rendered subordinate to an intervening mortgage. *Railroad Construction Co. v. D. & St. P. Rld. Co.*, 46 Iowa, 406.

Where a mortgagee purchased in the equity, but it afterward appeared that there was a judgment lien upon it in favor of a creditor of the mortgagor, it was held not to merge the mortgage, so as to let in this lien upon the estate of the mortgagee. *Vannice v. Bergen*, 16 Iowa, 555, 562; *Wickersham v. Reeves*, 1 id. 413; *Lyons v. McIlvaine*, 24 id. 9.

It is a general rule that, when the legal title becomes united with the equitable title, so that the owner has the whole title, the mortgage is merged by unity of possession. But if the owner has an interest in keeping these titles distinct, or if

there be an intervening right between the mortgage and the equity, there is no merger. *Hancock v. Hancock,* 22 N. Y. 568; *Lynch v. Pfeiffer,* 17 N. E. Rep. 402; *Grellet v. Heilshorn,* 4 Nev. 526; *Wilhelmi v. Leenard,* 13 Iowa, 330; *Hill v. Pixly,* 63 Barb. (N. Y.) 200; *Warren v. Warren,* 30 Vt. 530; *Ætna L. Ins. Co. v. Corn,* 89 Ill. 170; *Dirks v. Logsdon,* 59 Md. 173; *Bunch v. Grave* (Ind.), 12 N. E. Rep. 514; *Birke v. Abbott,* 103 Ind. 1; *Crane v. Aultman-Taylor Co.,* 61 Wis. 110. See, also, *Smith v. Roberts,* 91 N. Y. 470; *James v. Morey,* 2 Cow. (N. Y.) 246; *Crosby v. Chase,* 17 Me. 369; *Bean v. Boothby,* 57 id. 295; *Ryer v. Gass,* 130 Mass. 227.

And, generally, when it is to the advantage of the mortgagee to preserve his mortgage title, no merger takes place. *Forbes v. Moffatt,* 18 Ves. 384; *New Jersey Ins. Co. v. Meeker,* 40 N. J. L. 18; *Freeman v. Paul,* 3 Me. 260; *Brooks v. Rice,* 56 Cal. 428; *Linscott v. Lamart,* 46 Iowa, 312; *Fithian v. Corwin,* 17 Ohio St. 118; *Carpenter v. Gleason,* 58 Vt. 244; *Dumphy v. Riddle,* 86 Ill. 22; *Ann Arbor Savings Bank v. Webb,* 56 Mich. 443; *Hospes v. Almstedt,* 83 Mo. 473; *Thomas v. Simmons,* 103 Ind. 538.

Where a mortgagee takes a conveyance of the land from the mortgagor or from a grantee of the mortgagor, if the transaction is fair, there is nothing to prevent a court of equity from decreeing against a merger. *Stantons v. Thompson,* 49 N. H. 272; *Edgerton v. Young,* 43 Ill. 464; *Freeman v. Paul,* 3 Me. 260. See, also, *Hanlon v. Dougherty,* 109 Ind. 37; *Young v. Hill,* 31 N. J. Eq. 429; *Lowman v. Lowman,* 118 Ill. 582; *Corey v. Alderman,* 46 Mich. 540; *Bruse v. Nelson,* 35 Iowa, 157; *Besser v. Hawthorne,* 3 Ore. 129; *Shaver v. Williams,* 87 Ill. 469; *Van Duyne v. Shann,* 41 N. J. Eq. 311; *Thorpe v. Durbon,* 55 Iowa, 192; *Eggeman v. Eggeman,* 37 Mich. 436.

A junior incumbrancer who pays off a prior incumbrance becomes entitled to a cession of the debt and a subrogation to all rights of the mortgagee. *Patterson v. Birdsall,* 64 N. Y. 294; *Worcester Nat. Bank v. Cheeney,* 87 Ill. 602, 615; *Baldwin v. Moffett,* 26 Hun (N. Y.), 209; *Spalding v. Crane,* 46 Vt. 292; *Young v. Hill,* 31 N. J. Eq. 429. See, also, *Van-*

*nice v. Bergen,* 16 Iowa, 555, 562; *Lyon v. McIlvaine,* 24 id.
9; *Holden v. Garrett,* 23 Kas. 109.

The law of this state is well settled, that a deed, absolute
upon its face, may be nothing but a mortgage.   So, also, an
absolute conveyance is an incumbrance in the fullest sense of
the term.   *Warden v. Sabins,* 36 Kas. 165.   The reasoning in
*Plumb v. Bay,* 18 Kas. 415, applies with equal force to the
conveyance to defendants in error, whether the same be re-
garded as a mortgage or as an absolute conveyance, as plain-
tiffs have always claimed it to be.   If it be such, then the
same can be enjoined at our instance, because it would cast a
cloud upon our title.   Injunctions will be granted to restrain
sale of the land of defendants in error under an execution
issued against a third party.   *Dean v. McAdams,* 22 Kas. 544;
High, Inj., §§ 248, 249, 373, and 463.   See, also, *Smith v.
Roberts,* 91 N. Y. 470; *James v. Morey,* 2 Cow. (N. Y.) 246;
*Crosby v. Chase,* 17 Me. 369.

*Hutchings & Keplinger,* for plaintiffs in error in reply:

The brief of defendants in error admits our lien and makes
no objection to the form of the execution, but insists that the
levy should have been made subject to certain alleged liens.
Very well; suppose we were willing and anxious to do so:
how could we, in view of the injunction we now seek to
have set aside?   The defendants go into the district court
and tie up our hands, so that we cannot proceed in any way
with the execution, or upon the judgment, and then seek to
defend such order in this court by contending that we have
the right to proceed in a particular way.   Suppose, after a
perusal of defendants' brief, we should be convinced, and
should wish to proceed in the precise manner pointed out:
how could we do so unless we first procure a reversal of the
order as made?

There is not a syllable in the petition to show that the exe-
cution was not precisely as the law required it to be.   If
may means must, it must be presumed the sheriff complied
with the law.   There is not a syllable in the petition to show

that the execution was not levied subject to the mortgage; that it was not levied subject to the alleged mechanic's lien; that the land was not appraised subject to all these liens.

Why should the ponderous machinery of a court of equity be invoked when the same end can be attained by calling the attention of the court to the matter in resisting confirmation, or on motion to set aside sale? Can it be possible that irregu- larities in the service of an execution, or in the making of an appraisement, or even the failure to make any appraisement at all in cases where appraisal is required, which would be cause for setting aside or refusing to confirm a judicial sale, may, at the option of a party interested, be made the basis of equi- table relief to enjoin a sale?

The allegations of a petition must be construed most strongly against the pleader. He selects his own language, and the op- posite party has a right to rely upon the intention as clearly indicated by the words used, and if inconsistent allegations are used, those which are unfavorable to the pleader must govern. *Losch v. Pickett,* 36 Kas. 222. Taking the petition as meaning just what it says, defendants had no mechanic's lien after the 7th of June, 1888.

There is not the slightest necessity for enjoining the sale, since the purchaser would hold subject to whatever judgment might be rendered in such foreclosure. Either that which the defendants have is a mechanic's lien, or it is not. If it is a mechanic's lien, no possible reason can be given why they should not foreclose it as provided by statute, and if they have a mechanic's lien they cannot utilize such lien against third parties in any way except by the very proceeding pro- vided for in the statute.

Counsel are entirely at fault in supposing that we confound foreclosure proceedings in case of mechanics' liens with equi- table jurisdiction. It may be, as claimed by defendants, that equity "frequently takes cognizance of mechanics' liens, and protects them when once in existence." What we claim is, that equity cannot interfere to protect a mechanic's lien after it is once out of existence. What we wish to emphasize is

33—49 KAS.

that, so far as plaintiff is concerned, the defendants never applied to equity for any relief against plaintiff until they no longer had any lien as against plaintiff to be aided by equity. As said by this court in *Newman v. Brown*, 27 Kas. 121, "whatever might be the equities of the case, a mechanic's lien is the creature of the statute, and he who would perfect one must follow the plain provision of the statute; otherwise, he must look to the man with whom he made his contract."

So far as the mortgages are concerned there is no question of merger. The defendants never held mortgages on the property. We never heard it claimed that a mortgage to one party duly recorded, as defendants say those in question were, could be wiped out by conveying the mortgaged premises to some third party. We never supposed that a sale under the execution would affect any rights which defendants or any one else had by virtue of those mortgages. But we chiefly rely, not upon merger alleged in the petition for an extinction of the lien, but upon the fact that no action was ever brought against us for its enforcement, either during the year after the filing of the lien statement, or at any time thereafter.

An Iowa case is cited by defendants' counsel to show that in case of a mere substitution of securities there can be no intervening incumbrances. All such cases will be found to be cases where the prior lien was one existing by contract only, and over which the parties had absolute control, and which they could alter or extend as they saw fit.

There are exceptional cases in which such sales will be enjoined, and the case of *Plumb v. Bay*, 18 Kas. 415, was one in which an injunction was allowed, but the court in rendering its decision so clearly indicates the principles upon which the allowance and refusal of such injunction depend, that no other references will be necessary. In that case the plaintiff was held to be entitled to an injunction because the property, if sold, would pass into the hands of a *bona fide* purchaser. But even in that case it was held that the party would not

be entitled to such an injunction as was allowed in the case
at bar.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district
court of Wyandotte county on May 11, 1889, by Robert Gar-
rett and D. J. Griest against Thomas B. Bowling, sheriff, and
the Badger Lumber Company, to perpetually enjoin the de-
fendants from selling certain real estate upon execution. The
defendants demurred to the plaintiffs' petition, upon the ground
that it did not state facts sufficient to constitute a cause of ac-
tion, which demurrer was overruled, and the defendants elect-
ing to stand upon their demurrer, judgment was rendered in
favor of the plaintiffs and against the defendants, in accord-
ance with the prayer of the plaintiffs' petition; and the de-
fendants, as plaintiffs in error, bring the case to this court for
review.

It appears that on June 5, 1888, the June term of the dis-
trict court of Wyandotte county commenced. On that day,
and prior thereto, Fred. M. Cox was the owner of the real
estate now in controversy, which real estate was, however,
subject to a mechanic's lien held by the plaintiffs amounting
to $2,380, and subject to three mortgage liens aggregating
$4,346.52. At that time, and prior thereto, the plaintiffs
were partners, doing business under the firm-name of the Wy-
andotte Lumber Company; and the defendant, the Badger
Lumber Company, was and is a Missouri corporation. On
that day, and prior thereto, the plaintiffs had an action pend-
ing in the district court of Wyandotte county against Cox to
foreclose the aforesaid mechanic's lien; and the Badger Lum-
ber Company also had an action pending in said court against
Cox for about $2,344. But there is no pretense that the
Badger Lumber Company had any lien upon the property at
that time. On June 7, 1888, the plaintiffs and Cox settled
their affairs, and as a result of such settlement Cox, in con-
sideration of the aforesaid mechanic's lien and of the afore-
said mortgages which the plaintiffs agreed to pay, conveyed

to them the property in controversy, which, as before stated, was subject to said mechanic's lien and to the aforesaid mortgages. The deed of conveyance from Cox to the plaintiffs was recorded on the same day, and on the same day the plaintiffs dismissed their action against Cox to foreclose their mechanic's lien and discharged the lien. Immediately afterward the plaintiffs took the possession of the property, and have had the possession ever since. Afterward the plaintiffs paid on said mortgages the amount of $2,127.50. Afterward, and on September 8, 1888, the defendant the Badger Lumber Company obtained a judgment in the district court in its aforesaid action against Cox for the sum of $2,344; and this judgment, under the provisions of § 419 of the civil code, would relate back to June 5, 1888, when that term of the court commenced, and be a lien upon all the real estate owned by Cox at that time and in the meantime and subject to execution. On April 5, 1889, an execution was issued upon the judgment in favor of the Badger Lumber Company and against Cox, and was placed in the hands of the defendant Thomas B. Bowling, who was then the sheriff of Wyandotte county; and afterward, under the authority of such execution, he levied upon the property now in controversy, and advertised the same to be sold on May 20, 1889; but prior to May 20, 1889, and on May 11, 1889, the plaintiffs, Garrett and Griest, commenced this present action against Bowling and the Badger Lumber Company to perpetually enjoin and restrain them from making such sale; and the only question now to be determined is, whether such an action can be maintained or not.

Before proceeding further, we might state that the plaintiffs' petition does not state that the action of the Badger Lumber Company against Cox was pending in the district court of Wyandotte county on June 5, 1888, nor does it state that the June term of such court continued until September 8, 1888, when the Badger Lumber Company's judgment against Cox was rendered; and if such action was not pending on June 5, 1888, or if the said judgment was not rendered at the *June term* of

said court, then the Badger Lumber Company's judgment
could not be a lien upon any of Cox's real estate which he
conveyed on June 7, 1888. (Civil Code, § 419.)  The district
court may have been holding a *special term and not the June
term* of said court on September 8, 1888; but as the parties
seem by their briefs to agree that the Badger Lumber Com-
pany's action against Cox was pending on June 5, 1888, and
that its judgment was rendered at the June term of such court,
on September 8, 1888, we have stated these matters as facts.
Neither does the plaintiffs' petition state in express terms that
the Badger Lumber Company's execution was levied upon the
property in controversy, or that the same was appraised and
advertised for sale without reference to the mechanic's lien and
the mortgage liens; but we think it does so state by fair im-
plication and inference, and in all probability such were the
facts, and the petition was evidently so construed by the court
below and the parties, and we shall so construe it.  If the
land had been levied upon and then appraised and advertised
for sale subject to the aforesaid mechanic's lien and mortgage
liens, the plaintiffs we think would not have had or now have
any cause of action. (Civil Code, § 448, as amended in 1887.)
For, under the facts of the case and the aforesaid statutes, the
Badger Lumber Company's judgment was a lien upon the en-
tire property, subject, however, to the aforesaid mechanic's
lien and mortgage liens.

We would also state, before proceeding further, that the
plaintiffs' mechanic's-lien statement was filed on December
29, 1887, and if the lien had not been discharged except by
lapse of time, it would have continued to be a valid and sub-
sisting lien for at least one year after the statement was filed,
and might have continued to be a valid and subsisting lien for
any greater period of time, providing a promissory note, not
to become due for such greater period of time, had been given
for the amount. (Mechanic's Lien Law of 1872, § 4; Mechan-
ic's Lien Law of 1889, § 5.)  The Badger Lumber Company's
judgment was rendered before the expiration of the year, and
the June term of the district court in 1888 must also have

expired before the expiration of the year; for the *September term* of such court must necessarily have commenced, under the law, on the third Monday in September of that year. (Laws of 1887, ch. 147, § 12.)

Also, before proceeding further, we would state "that the judgment lien cannot attach to a mere naked legal estate, when the entire equitable estate is vested in some third person. And in no case will the judgment lien attach to any interest greater than the judgment debtor himself possesses in the land." (*Harrison v. Andrews*, 18 Kas. 535, 541, 542, and cases there cited. "The judgment lien attaches merely to the interest of the judgment debtor in the land, and to nothing more. (Civil Code, § 419.) Every equity belonging to other persons will be protected by the courts. A judgment creditor is never considered as a *bona fide* purchaser, or even a purchaser at all." (*Harrison v. Andrews*, supra. See, also, *Holden v. Garrett*, 23 Kas. 98.)

We would also state that the Badger Lumber Company was not a party to the action brought by the plaintiffs against Cox to foreclose their mechanic's lien, and it had no right to be a party to such action; for it did not have, nor even claim to have, any lien upon the property in controversy until more than three months had elapsed after the plaintiff's action had been dismissed, and until September 8, 1888. At the time when the plaintiffs' foreclosure action was dismissed, they could not have foreclosed their mechanic's lien as against the Badger Lumber Company, nor even have made such company a party to the foreclosure action. Hence, if the plaintiffs' foreclosure action had been prosecuted to final judgment, and the judgment obtained before September 8, 1888, and the property sold thereunder to satisfy the mechanic's lien, the purchaser would undoubtedly have obtained a good and valid title, free and clear from all claim of the Badger Lumber Company. Then why might not the plaintiffs, instead of prosecuting their action to final judgment at great cost and expense, settle their affairs with the defendant Cox, and take the property in payment of their mechanic's lien, free and

clear from the claim of the Badger Lumber Company? Such would seem to be equity. Or does the law favor litigation? Would the law be so inequitable as to require the holder of a lien of any kind upon real estate to prosecute his claim in the courts to final judgment at great inconvenience and cost, when he could compromise and settle his claim with his debtor to the satisfaction of both parties, and without inconvenience or costs? And would the law require this or require him to lose everything?

The only distinction between the two cases is this: If the plaintiffs' action had been prosecuted to final judgment, only so much of the property would have been sold as would satisfy the liens upon it, and any surplus arising from the sale after satisfying the liens would have gone to Cox or to any of his creditors who might be entitled to it, while the compromise and settlement between the plaintiffs and Cox, and the conveyance by Cox to the plaintiffs, left the property subject to any judgment lien which might be procured against it at a term of the court then being held, and in an action pending at the commencement of the term. But the Badger Lumber Company's judgment lien attached only to the rights and interests of Cox in and to the property, and to nothing more. It left the property subject to all the prior liens, the mechanic's lien and the mortgage liens, and they have certainly not been extinguished for the benefit of the Badger Lumber Company. Certainly, by their extinguishment, so far as they have been extinguished, neither Cox nor the Badger Lumber Company has procured any enlargement of his or its rights or interests in or to the property in controversy. But these liens have not been extinguished so far as the rights of the plaintiffs are concerned. Cox parted with all his rights and interests in and to the property before they were extinguished, and the Badger Lumber Company's lien is upon no greater interest than Cox possessed. The Badger Lumber Company, however, makes a claim upon the following statement, found in the plaintiffs' petition, to wit: "All of the real estate in said lien described, including that conveyed to plaintiffs, was

released and discharged from the operation thereof." This, of course, did not mean that the lien was discharged as to any one except as between the plaintiffs and Cox. Certainly, the plaintiffs did not intend to release the lien for the benefit of the Badger Lumber Company, but only for the benefit of Cox, and they procured a conveyance of the land from Cox to themselves in return. Their agreement to release the lien, amounting to $2,380, and their agreement to pay the mortgage debts, amounting to $4,346.52, and their actual payment of $2,127.50 thereof, were not intended for the benefit of, or as gifts to, the Badger Lumber Company, but were intended only for the benefit of Cox; and when they accepted the conveyance from Cox, which was a general warranty deed for the real estate in controversy, they did not intend that this conveyance should inure to the benefit of the Badger Lumber Company, so that such company might obtain a judgment lien upon all the property conveyed, free and clear from the prior incumbrances of the mechanic's lien and the mortgage liens, but they evidently intended only to protect and preserve their own interests. The whole tenor and effect of the petition shows that the plaintiffs did not intend to allege that their mechanic's lien was released and discharged as between themselves and the Badger Lumber Company, but only as between themselves and Cox; and that they intended that all their rights and interests under the mechanic's lien, and their settlement and compromise with Cox, their agreement to pay the mortgage debts, and the conveyance by Cox of the real estate in controversy to themselves, should preserve to them and to Cox all the rights and interests which such mechanic's lien, settlement, compromise, agreement to pay the mortgage debts and conveyance would give or preserve to them. When t hey agreed to pay the mortgage debts, they became, according to all the authorities, as between themselves and Cox, the principal d ebtors as to such mortgage debt, and Cox, who up to that time was the principal debtor, then became only a surety. (*Stove Works v. Caswell,* 48 Kas. 689; same case, 29 Pac. Rep. 1072.)

The Badger Lumber Company's judgment was not rendered against Cox until more than three months after Cox had conveyed by a general warranty deed to the plaintiffs all his possible interests in the property in controversy; yet, under the statutes, (Civil Code, § 419,) and by relation, the company by such judgment obtained a lien upon and a right to have sold upon execution whatever interest Cox may have had in such real estate at the time when he conveyed the same to the plaintiffs, but the company did not obtain a right to have any greater interest levied upon or appraised or advertised for sale or sold. The statute upon this subject reads as follows:

"If any of the lands and tenements of the debtor which may be liable shall be encumbered by mortgage or any other lien or liens, such lands and tenements may be levied upon and appraised and sold subject to such lien or liens, which shall be stated in the appraisement." (Civil Code, § 448, as amended in 1887.)

The sheriff, however, in this present case, at the instance of the Badger Lumber Company, has levied upon, has had appraised, has advertised for sale, and will sell if not prevented, a greater interest in the property than Cox had when he conveyed the property to the plaintiffs. Have the plaintiffs no remedy, or will injunction lie? As to subrogation, see the cases of *Crippen v. Chappel*, 35 Kas. 495, 499; *Yaple v. Stephens*, 36 id. 680. In the first of the above cases it is said:

"Generally where it is equitable that a person furnishing money to pay a debt should be substituted for the creditor or in place of the creditor, such person will be so substituted."

See, also, with regard to mechanics' liens and preventing a merger, the case of *Construction Co. v. D. & St. P. Rld. Co.*, 46 Iowa, 406. In that case it is decided as follows:

"When the holder of a lien acquires the legal title to the property upon which it rests with the intention that the lien should not be merged therein, the intention of the lien holder will prevail, as against junior incumbrancers." (Syllabus.)

In the case of *Richardson v. Hockenhull*, 85 Ill. 124, it is decided as follows:

"A court of equity will keep an incumbrance alive or consider it extinguished, as will best serve the purposes of justice and the actual and just intention of the parties. The intention is the controlling consideration, and to arrive at this the court will look into all the circumstances of the case.

"If a mortgage is the eldest lien, and is for an amount equal to or exceeding the value of the mortgaged premises, and the mortgagee, to avoid the expense of foreclosure, takes a conveyance from the mortgagor, a court of equity will not permit the mortgaged premises to be swept away from him by a junior judgment creditor, without payment of the mortgage, under the pretense that its lien has been lost by merger, but will enjoin the sale at law, or restrict the judgment creditor's lien to the equity of redemption." (Syllabus.)

In the case of *Brooks v. Rice*, 56 Cal. 428, it is decided as follows:

"A conveyance of mortgaged premises by a mortgagor to a mortgagee, made in satisfaction of the mortgage, and for the purpose of avoiding the expense of a foreclosure, *held*, where there was an intervening mortgage, not to operate a merger." (Syllabus.)

In the case of *Hanlon v. Doherty*, 109 Ind. 37, it is decided as follows:

"Even when the fee in the mortgaged property has been vested in the mortgagee by a conveyance from the mortgagor, and the mortgage has been released, it will still be upheld, whenever it is for the interest of the mortgagee, by reason of some intervening title or other cause, that it should not be regarded as merged." (Syllabus.)

See, also, the following cases: *Bruse v. Nelson*, 35 Iowa, 157; *Lowman v. Lowman*, 118 Ill. 582; *Watson v. Gardner*, 119 id. 312; *Rumpp v. Gerkens*, 59 Cal. 496; *Besser v. Hawthorne*, 3 Ore. 130; *Young v. Hill*, 31 N. J. Eq. 429; *Van Duyne v. Shann*, 41 id. 311; *Stantons v. Thompson*, 49 N. H. 272.) It is our opinion that whenever the holder of a mechanic's lien acquires the title to the property upon which the

1. Mechanic's
lien — convey-
ance of prop-
erty to lienor
— merger.

mechanic's lien exists by a conveyance thereof from the owner, and not by a foreclosure in the courts, though that would be equally good, the mechanic's lien will not be so merged in the legal title or be so extinguished or destroyed that a judgment subsequently rendered in favor of a third person against such owner, but rendered at a term of the court commenced before the conveyance was made, and in an action pending at the beginning of the term, would create a judgment lien prior or superior to the mechanic's lien, or would authorize the property to be sold on an execution issued on such judgment, free and clear from such mechanic's lien; and we would also think that, in such a case, where a part of the consideration for the conveyance by the owner to the holder of the mechanic's lien was

2. Execution—
sale, not free
from mortgage
lien.

that the holder of the mechanic's lien should pay and satisfy certain mortgages then existing upon the real estate, a portion of the amount of which mortgages he did pay, the property could not properly be sold on such execution free and clear from such mortgages. And we would also think that injunction would be the proper

3. Judgment
creditors — ex-
ecution sale —
judgment.

remedy by the holder of the mechanic's lien against the judgment creditor to protect his interests as against such sale, and this upon the authority of the case of *Plumb v. Bay*, 18 Kas. 415. (See, also, *Richardson v. Hockenhull*, 85 Ill. 124; *Young v. Hill*, 31 N. J. Eq. 429.) And we also think that injunction is the proper remedy in the present case. For instance, if the plaintiffs had not commenced any action, but had permitted the property to be sold on the execution to an innocent purchaser, such innocent purchaser would undoubtedly have obtained the title to the entire property, freed from the mechanic's lien and from all that the plaintiffs had paid on the mortgages; for no record could at that time have been found showing conclusively that the mechanic's lien had any legal or valid existence for any amount, and no record could then have been found showing the amount paid on the mortgages by the plaintiffs. All these matters rested in evidence out-

side of records, and when the plaintiffs alleged them in their petition, the defendants could have controverted them by answer, if they had so chosen. If the defendants had desired to contest the validity or the amount of the mechanic's lien, or of the mortgage liens, or any part thereof, or any supposed rights of the plaintiffs founded thereon, they could have done so and perhaps can still do so in this present action, by filing a proper answer and going to trial upon the merits of the action. As before stated, the Badger Lumber Company had the right, and still has the right, to have the property in controversy sold upon execution to satisfy its judgment, provided, however, that it is sold subject to all the rights of the plaintiffs founded upon their mechanic's lien and the mortgage liens.

It follows from the foregoing views, that the decision of the court below in overruling the defendants' demurrer to the plaintiffs' petition was and is correct, and it will be affirmed; but we would think that the final judgment of the court below, after overruling the demurrer, was broader than it should have been, and it will be modified in accordance with the views herein expressed.

All the Justices concurring.