## CIRCUIT COURT OF THE CITY OF RICHMOND

Sally B. Dawson

v.

D. Sam Perry, Jr.

May 5, 1993

Case No. HC-887–3

BY JUDGE T. J. MARKOW

Trial of this case was held before the court on March 2, 1993, at which time the parties presented evidence and the court took the matter under advisement. Both parties submitted post-trial memoranda, and the court is now prepared to rule.

This case arises out of the following facts. Plaintiff Sally Dawson lived at 710 Freeman Road from 1969 until 1986, at which time the property was foreclosed upon. Equity Acceptance Corporation purchased the property at foreclosure and subsequently assigned its rights to defendant, Mr. Perry.

Ms. Dawson had received approximately $9,000.00 from the foreclosure sale, and she entered into an agreement with Mr. Perry to use that $9,000.00 as a down payment and buy back her house. The purchase agreement, entered into on September 24, 1986, provided that Ms. Dawson would rent the property until settlement. Settlement did not occur until March 19, 1990 (although the documents are dated January 1, 1990). The purchase contract was on its face contingent upon Ms. Dawson's obtaining an all-inclusive deed of trust on the property; however, there is a difference of opinion on this issue. Mr. Perry faults Ms. Dawson for not attempting to obtain outside financing, but Ms. Dawson apparently believed all along that Mr. Perry would provide the financing. Regardless, on March 19, 1990, Mr. Perry

conveyed the property to Ms. Dawson, who executed a deed of trust in favor of Mr. Perry. On the same date, Ms. Dawson signed a letter agreement and a deed conveying the property back to Mr. Perry; the agreement provided that Mr. Perry would hold the deed and record it in the event Ms. Dawson became two months delinquent in her payments. All documents were prepared by Mr. Perry. Mr. Perry characterizes this arrangement as a "deed in lieu of foreclosure." When payments were not received for April and May, Mr. Perry proceeded to record the deed on May 22, 1990, and to sell the property to an innocent purchaser in April of 1991. Ms. Dawson has, in essence, lost all of her equity by entering into this arrangement instigated by Perry.

Ms. Dawson contests the validity of the "deed in lieu of foreclosure" arrangement, arguing that it impermissibly cut off her equity of redemption. Mr. Perry contends that Ms. Dawson validly contracted away her equity of redemption in consideration of his providing financing for the transaction.

The only Virginia authority on the subject is *Snavely v. Pickle,* 70 Va. (29 Gratt.) 27 (1877), which stands for the proposition that the equity of redemption is "an inseparable equitable incident of every mortgage." *Id.* at. 35.

> It is not meant, however, that after a mortgage has been once created, the mortgagee may not become the purchaser from the mortgagor of his equity of redemption. He may become such purchaser, thus combining the legal and equitable estates, and his purchase will be valid, if, under the jealous scrutiny of a court of equity, it is shown to be for an adequate consideration, that no undue advantage has been taken of the necessities of the mortgagor, and that it is in all respects fair.

*Id.* Plaintiff points to the language which states that the equity of redemption may be purchased *after* the mortgage has been created. Since the deed of trust and deed in lieu of foreclosure herein were executed at the same time, plaintiff contends that the transaction does not fall within the *Snavely* language and is invalid. Defendant disputes the importance placed on the word "after," and contends that the deed in lieu of foreclosure is valid because it meets the other criteria, adequate consideration, no undue advantage, fairness.

While *Snavely v. Pickle* states the general rule, it does not provide much illumination beyond the proposition itself. The parties have not

cited, nor has the court found in its own search, any other Virginia authority addressing the situation. However, the court has reviewed a number of cases and articles from other jurisdictions which have provided helpful background and interpretation. This information has buttressed the court's initial belief, alluded to at trial (Tr. at 88, 1. 21, to 89, 1. 8), that a deed in lieu of foreclosure is normally executed after default, when foreclosure is threatened. It is an agreement subsequent to and separate from the mortgage transaction, for new consideration. A recent Florida case, *Ringling Joint Venture II v. Huntington National Bank*, 595 So. 2d 180 (Fla. Dist. Ct. App. 1992), discussed a deed in lieu of foreclosure executed in an attempt to resolve a dispute as a result of a foreclosure action. The court stated the rule against cutting off the equity of redemption, but recognized that:

> [t]he doctrine against clogging the right of redemption does not create an absolute right. The courts have recognized that this doctrine of equity does not apply if the right is relinquished by a "subsequent agreement upon a further consideration." . . . .
>
> Technically, Ringling may be correct that the conveyance agreement is not a "subsequent agreement" because it was created in conjunction with new mortgage documents. Nevertheless, it is an agreement subsequent to the promissory notes and mortgages involved in the earlier foreclosure proceeding. It is clear that this agreement was given to avoid foreclosure and that Ringling received valuable new consideration to relinquish its right of redemption. If we examine the underlying policy for the doctrine against clogging the right of redemption, it is obvious that this agreement was intended to assist Ringling at the time of the earlier foreclosure and was not an unfair scheme to taking Ringling's equity in the property or its right of redemption.

*Id.* at 182–183 (citations omitted).

Another case recognizing the importance of a separate transaction is *First Illinois National Bank v. Hans*, 493 N.E.2d 1171 (Ill. App. Ct. 1986), which discussed a deed in lieu of foreclosure executed as a provision of the mortgage itself. In declaring such a provision void, the court stated:

the courts take a dim view of any attempt to limit or extinguish the mortgagor's equitable right of redemption. Although it is not impossible for a mortgagee to acquire the mortgagor's right of redemption . . . a mortgagor may not do so pursuant to a provision contained in the mortgage itself, regardless of how explicit its language may be.

"Any provision in the mortgage purporting to terminate the mortgagor's ownership in the case of failure to make payments when due is against public policy and is void. *Once a mortgage, always a mortgage.* It cannot be converted into an outright deed by the mere default of the mortgagor. No matter how the mortgage seeks to disguise an attempted waiver of the equitable right of redemption, the courts will strike it down." . . . .

To the extent that plaintiff relies on *Lowman v. Lowman* (1886), 118 Ill. 582, 9 N.E. 245, as authority that a mortgagee can take a deed in lieu of foreclosure, that reliance is misplaced. In *Lowman* the court merely observed that a mortgagee may, if he so chooses, accept a conveyance from the mortgagor in order to avoid the expense of proceeding with a foreclosure action. That is a far different situation from the one presented here where the mortgage itself *required* the mortgagor to execute a deed upon the occurrence of a default.

*Id.* at 1174–1175 (citations omitted) (emphasis in original). In light of these discussions, the language in *Snavely v. Pickle* which allows a purchase of the equity of redemption "*after* a mortgage has been once created" does become very significant, as plaintiff argues. While the deed in lieu of foreclosure involved in the instant case was not a written provision in the actual deed of trust, it was executed at the same time, as part of a single transaction. In fact Mr. Perry himself asserts that the consideration for this deed in lieu of foreclosure was his providing financing for Ms. Dawson, who had a poor credit history. However, his financing was also the consideration for Ms. Dawson's executing the deed of trust in his favor. He stated that without the deed in lieu of foreclosure, he would not have provided financing. This is significant, because it recognizes the unitary nature of the transaction. The deed in lieu was *required* for Ms. Dawson to obtain the financing in the first instance, the very thing forbidden in the *Hans* case, *supra.* Mr. Perry admitted that the deed in lieu was a prerequisite for him to

provide financing; thus it was, in effect, a provision of the mortgage itself. There was simply no new consideration for Ms. Dawson to forfeit her equity of redemption, and the so-called deed in lieu of foreclosure was not valid.

Additionally, in *Snavely v. Pickle, supra,* the Supreme Court stated that if this were an otherwise valid conveyance, a court of equity must hold the transaction to "jealous scrutiny" and determine that the transaction was "in all respects fair." *See Snavely,* at 35. This transaction does not pass that scrutiny.

Ms. Dawson is an elderly, very unsophisticated person. She was desperate to preserve her home, and she relied on Mr. Perry to help her achieve that objective. She did not know what a deed of trust was and believed that upon default there would be a foreclosure and she could receive a return of equity after a foreclosure sale. She also gave Mr. Perry the $9,000 when the lease was executed, not the settlement documents. Perry held that money until January 1, 1990. In fact, Perry did not even obtain title until January 6, 1987, even though he entered contract of sale with Dawson on September 24, 1986. All documents were prepared by and the structure of the transaction dictated by Perry.

There is no doubt that Dawson was delinquent under the lease and was probably a bad credit risk. Perry had reason to want to protect himself as a lender. That was the purpose of the deed of trust. His demand for more protection, however, was improper, was unfair and cannot be condoned by this court sitting in equity.

The court agrees with Dawson that what Perry deprived her of was her equity of redemption. Here that value was $26,138.00. Perry is not entitled to any "value" he added to the house. It was not his to improve. He gave no evidence of the cost of repairs to the house. The only evidence he gave was his estimate of the value he added. The court finds this evidence irrelevant, unbelievable, and grossly overstated.

The court will award Ms. Dawson the value of her equity of redemption which was denied her by Perry.