GEORGE L. SELDNER ET AL. vs. SESKIND KATZ ET
AL., ADMINISTRATOR.

*Equity Jurisdiction—Deceased Debtor's Land in Another State.*

A Court of equity of this State has no jurisdiction to order the heirs of a
deceased debtor from whom they inherited land situated in another
State to sell their interest in said land in order to pay a creditor of
such decedent

Appeal from a decree of Circuit Court No. 2, of Baltimore
City (DENNIS, J.)

The cause was argued before McSHERRY, C. J., FOWLER,
BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*John Watson, Jr.*, for the appellants.

By the common law the *real estate* of a deceased debtor was
not liable for the payment of simple contract creditors. *Tessier* v. *Wise*, 3 Bl. 38–9; *VanBibber* v. *Reese*, 71 Md. 611;
*Hammond* v. *Hammond*, 2 Bl. 317. And in Maryland the
simple contract creditor was without redress as against lands
descended or devised until the Act of 1785, ch. 72 (Code,
Art. 16, sec. 188.) *VanBibber* v. *Reese, supra.* In this class
of cases the Chancery Court had no original jurisdiction ; the
jurisdiction being statutory, and the statute having no extra-
territorial operation, the Maryland Court cannot, at the instance
of a creditor subject lands of a decedent in another State to
the payment of the claims of creditors.

"In respect to immovable property, every attempt of any
foreign tribunal to found a jurisdiction over it must from the
very nature of the case, be utterly nugatory, and its decree
must be forever incapable of execution *in rem.*" *Story's Conf.
of Law*, sec. 551; *Lide* v. *Parker*, 60 Ala. 165; *Post* v. *Mackall*,
3 Bl. 51; *Plumb* v. *Bateman*, 2 App. Cas. (D. C.) 156.

So far as the bill in this case is concerned, *non constat* that
the common law does not prevail in Ohio; and real estate in
that State may not be subject to the claims of simple contract

creditors of a decedent. In *Plumb* v. *Bateman, supra,* the Court says: "We cannot concede to any Court whatever, whether of general or limited jurisdiction, the right to ad-minister as assets of a decedent, the real estate whereof he died seized in the District of Columbia, or in any manner to exercise authority over such real estate, \* \* \* but we are not advised that it has ever yet been held in any case, by any Court, that, in the administration of the assets of a de-ceased person, it could decree the sale of real estate situated outside of its territorial jurisdiction. \* \* \* \* \* We deem in unnecessary to cite authorities in support of a position so elementary."

Particular attention is called to the case of *Lide* v. *Parker,* 60 Ala. 165, as a case in all essential respects similar to this case. The Court, quoting the statute, says: "A creditor without a lien may file a bill in chancery, to subject to the payment of his debt *any property* which has been fraudulently transferred or attempted to be fraudently conveyed by his debtor. But evidently the *property* here referred to is prop-erty within the State of Alabama. It cannot be presumed that the Legislature meant to give to its enactment, if it could do so, an extra territorial operation or to authorize Courts of equity here, through their power over parties within their juris-diction, to appropriate real and personal property situate in another State to the payment of simple contract creditors in Alabama or elsewhere."

*Edgar Allan Poe* (with whom was *John P. Poe* on the brief) for the appellees.

The points involved are to be determined by the application of well-known general principles to the facts brought out by the testimony. We rely on the doctrine as expressed in *Tiede-man on Trusts,* sec. 312, that creditors have a constructive trust in the property of their debtors, which follows the lands into the hands of the voluntary grantees of the lands, and also on the doctrine that the rights of creditors are superior to those of the heirs at law and next of kin.

All the estate of the debtor, Eva Seldner, has been disposed of in one way or another ; one of her creditors, the late Daniel Katz, is still a creditor to the extent of over $4,500, and a valuable piece of property worth at least $12,000, situated in Ohio, is standing in the individual names of the children of the deceased debtor without one dollar passing from them as a consideration for the grant.

It is this situation of affairs that we complained of, and it was to remedy such a palpable injustice that the lower Court passed the decree appealed from. We are not assailing Jonas J. Seldner's rights in the property at all. We are bound by our agreement with him not to do so, but we do assail the right of the other children to hold on to property of their mother which they have gotten solely by virtue of being her heirs at law, until the estate of Katz, the creditor, has been paid in full. It is conceded that if the mortgage had been set aside, our contention would be correct and the Court's ruling proper, but it is contended that inasmuch as the mortgage was by a compromise agreement declared valid that that fact materially alters the situation. In other words, that the appellants derive their rights, not through their mother, but through Jonas J. Seldner. Our reply is that Courts of equity will not allow that to be done indirectly which could not be accomplished directly, and that equity regards substance rather than form. Disguise it as they may, the effect of the settlement in Ohio was a defeat of the mortgage claim *pro tanto.* Jonas J. Seldner's claim more than equalled the whole value of the land, and therefore when he surrendered five-twelfths of his judgment he acknowledged defeat to that extent. Therefore, if we would have been entitled to claim payment out of the entire land in Ohio in the event of the entire defeat of the mortgage claim, it manifestly follows that we are equally entitled to claim payment out of the five-twelfths saved to the estate, to the extent that the five-twelfths can discharge the obligation.

Objection has been urged against the form of the decree, for two reasons : first, because it operates on land beyond the

jurisdiction of the Court; and second, because it compels three out of the five defendants to pay the entire amount due Katz's estate in order to save their share in the Ohio property from being sold.

As to the first objection we simply desire to say that equity acts *in personam* and having the parties before it the Court frequently has exercised control over property beyond its jurisdiction by commanding the parties to do or refrain from doing certain acts in reference to that property. *Phelps' Juridical Equity*, sec. 222. As to the second objection. We only succeeded in summoning three out of the five originally joined as defendants and the decree does not *compel* the three to pay the entire debt, but only gives them the option of doing so should they desire to save their property. In other words, if by the settlement in controversy they secured to themselves more than the claim of the estate of Katz then manifestly it is to their interest to pay the claim rather than have the property sold. If the claim exceeds what they have acquired, then they will prefer to let the land be sold. In neither event is any injustice done them.

McSHERRY, C. J., delivered the opinion of the Court.

The controlling question in the pending case is this: Had Circuit Court No 2, of Baltimore City, jurisdiction to pass the decree against which the appeal now before us was taken? The facts bearing upon that question and disclosed by the record are as follows: Eva Seldner owed Daniel Katz seventeen thousand and eight hundred dollars evidenced by promissory notes. Eva Seldner died leaving a last will and testament. Her personal estate was insufficient to pay her debts. At the time of her death she owned real estate in Maryland and in the State of Ohio. A creditor's bill was filed by Daniel Katz in the Circuit Court of Baltimore City to subject her Maryland real estate to the payment of her debts and to vacate and set aside, as fraudulent, a certain mortgage to her son, Jonas J. Seldner, on her Ohio lands; and ultimately a decree was passed directing a sale of the real estate situated in Mary-

land.   A sale was made and the proceeds were applied to. the
part payment of the debt due to Katz.   So much of the bill
and the prayer for relief as related to the mortgage on the
Ohio land was dismissed by the plaintiff, Katz, before final
decree because, and in pursuance of an agreement between
Katz and Jonas Seldner to the effect that if Katz would aban-
don his assault upon the validity of the mortgage Jonas Seld-
ner would not seek payment of his debt secured by the Ohio
mortgage, out of the proceeds of the sale of the Maryland
lands until Katz had been paid his claim in full.   After those
proceeds were exhausted there still remained due to Katz a
balance of some forty-three hundred dollars.   The Ohio land
was subject, as already stated, to a mortgage in favor of Jonas
J. Seldner.   The debt secured by that mortgage was stated
to be twelve thousand three hundred and eighty dollars, which
had grown by the accumulation of interest to about twenty-
three thousand dollars at the time the pending proceedings
were inaugurated.   The validity of that mortgage was dis-
puted by other children of Eva Seldner and steps were taken
in Ohio to invalidate it.   Before, however, that litigation reached
a hearing a compromise was effected whereby it was agreed
that a judgment in favor of Jonas J. Seldner should be entered
up for twenty-three thousand dollars, and that five-twelfths of
the judgment should be assigned to the three appellants and
to two other children of Eva Seldner who, though made par-
ties to the pending cause, were not served with process.   It
was further stipulated in the agreement of compromise that
the Ohio land should be sold under the judgment and that if
it did not bring sufficient money to pay the amount of the
judgment, it should be bought in and held by two trustees for
the use of Jonas J. Seldner and the five other parties to the
compromise, in the proportion to which they were entitled to
the proceeds of the judgment.   A sale was had and the prop-
erty was bought in by the trustees for twelve thousand dol-
lars and later on the trustees conveyed the land to Jonas J.
Seldner, the three appellants and the two other parties to the
compromise, to be held in the proportion of seven-twelfths by

Jonas and one-twelfth by each of the other five.   Daniel Katz
having died his executors filed the bill of complaint now be-
fore us, against George L. Seldner, Charles S. Seldner, Rosella
Rosenburg, Rebecca S. Rayner and Abbie L. Fridenburg,
children of Eva Seldner—they being the grantees of a five-
twelfths undivided interest in the Ohio land—and the bill
prayed that the value of the real estate in Ohio so undertaken
to be divided amongst the defendants after the settlement of
the alleged mortgage claim of Jonas Seldner might be ascer-
tained and that a decree might be passed against the several
defendants requiring them to pay to the executors of Katz
such sum, not exceeding the value of their interests in the
Ohio land as shall be necessary to satisfy the balance owing
to the estate of Daniel Katz on the indebtedness due by Eva
Seldner.   Because of the agreement heretofore alluded to,
between Daniel Katz and Jonas Seldner in fulfillment of which
the creditor's bill was dismissed in so far forth as it assailed
the validity of Jonas Seldner's mortgage, Jonas Seldner's inter-
est in the Ohio lands was not pursued or sought to be affected
by the proceedings in this case.   After answers had been filed
by three of the defendants, process not having been served on
the other two, and after evidence had been taken a decree was
finally entered wherein amongst other things it was adjudged :
" It is therefore, this 18th day of March, 1902, by the Circuit
Court No. 2, of Baltimore City adjudged, ordered and decreed
that unless the defendants George L. Seldner, Rosella Rosen-
burg and Rebecca S. Rayner, three of the defendants in this
cause upon whom process has been served and who have ap-
peared to this cause and answered the bill, shall on or before
the 1st day of May, 1902, pay into this Court to be paid to
the plaintiff the said balance of four thousand three hundred
and sixteen dollars and fifty-three cents, with interest thereon
from October 25th, 1898, they, the said George L. Seldner,
Rebecca S. Rayner, and Rosella Rosenburg shall sell at pub-
lic auction in the county seat of Columbiana County on or be-
fore the 1st day of June, 1902, their three-fifths interest in the
said property in Columbiana County, Ohio, in order to dis-

charge the claim of the plaintiffs for the said unsatisfied balance of forty-three hundred and sixteen dollars and fifty-three cents with interest thereon from October 25th, 1898, and the manner of the sale shall be as follows:

"They shall give at least three weeks' notice by advertisement inserted in such daily newspaper published in the city of Baltimore, and such daily or weekly paper published in the county seat of Columbianna County, Ohio, as they shall think proper of the time, place, manner and terms of sale, which shall be for cash, and as soon as may be convenient after such sale they shall return to this Court a full and particular account of the proceedings relative to such sale with an annexed affidavit of the truth thereof and of the fairness of such sale and obtain the Court's ratification of the sale, and on the payment of the whole purchase-money, and not before, they shall, by good and sufficient deed, to be executed, acknowl-. edged, recorded, according to law, convey to the purchaser or purchasers, his, her or their heirs the property and estate to him, her or them sold free, clear and discharged from all claims of the parties complainant and defendants and those claiming by, from or under them or either of them and they shall bring into this Court the money arising from said sale to be distributed under the direction of this Court." From that decree this appeal was taken.

In the answer of each of the defendants want of jurisdiction in Circuit Court No. 2 to grant the relief prayed for was distinctly averred and expressly relied on.

It is not pretended that any of the appellants are indebted to the estate of Daniel Katz. The money sought to be recovered from them is money due by Eva Seldner's estate on promissory notes executed by her in her life time. But the effort is to make the appellants either personally liable for a debt due by their mother, or else through them to subject land lying in the State of Ohio to the operation and effect of a decree passed by a Maryland Court. If there had been no mortgage held by Jonas Seldner on the Ohio land, and if there had been no compromise of the controversy over the mort-

gage and if the Ohio land had passed either by descent or by the will of Eva Seldner to the appellants, it is perfectly obvious that creditors of Eva Seldner could not have filed a bill of complaint in this State against the heirs at law or the devisees for a sale of the Ohio lands to pay the decedents debts. And this is so because such a proceeding is *in rem*, *Tongue* v. *Morton*, 6 H. & J. 21; and when the thing to be affected by a proceeding *in rem* lies beyond the territory over which the tribunal appealed to has jurisdiction, the Court is absolutely without power to act. At the common law a simple contract creditor could not resort to the real estate of a deceased debtor to secure payment of the debt. *VanBibber* v. *Reese*, 71 Md. 611. The right to follow such real estate and to have it sold for the discharge of debts is wholly of statutory origin. Under the Code, *Art. 16, sec. 188*, which is taken from *sec. 5, ch. 72 of the Acts of 1785*, it is provided that "where any person dies, leaving any real estate in possession, remainder or reversion, and not leaving personal estate sufficient to pay his debts and costs of administration, the Court, on any suit instituted by any of his creditors, may decree that all the real estate of such person, or so much thereof as may be necessary, shall be sold to pay his debts, &c." This legislation is the source from which the equity Courts of Maryland derive their authority to decree the sale of a deceased debtor's real estate for the payment of his debts. It is perfectly apparent that its operation is not extra-territorial. It can have no effect whatever on real estate lying beyond the limits of the Commonwealth. Each State in the Federal Union has the right and the power to regulate the devolution of property situated within its borders. Each may prescribe what property of a decedent shall be liable for the payment of the debts due by him ; but neither can adopt an enactment which will in any way operate upon real property located in any of the others. Whilst, therefore, it is undoubtedly true that if this land located in Ohio had been located in Maryland it would have been liable to be sold, under the terms and provisions of our statute, for the payment of the balance due by Eva Seldner

to Daniel Katz, subject to the mortgage held by Jonas Seldner ; it is equally true that no Maryland Court could decree its sale, as it is situated in Ohio, even though there had been no mortgage upon it and even though it had descended or been devised to the appellants. This is so self-evident a proposition that that we need not pause to cite adjudged cases in support of it.

The situation is not altered by the mutations of title effected by the negotiations and the compromise of the mortgage contest in the State of Ohio. If the compromise in reality resulted in vesting in five of the children of Eva Seldner a five-twelfths interest in the Ohio lands, it by no means follows that that interest or any part or fraction of it, may be pursued in the hands of those children and made liable for Eva Seldner's debt to Katz. Whether land in Ohio is answerable for the debts due by a decedent depends on the statute law of that State. If the common law prevails in Ohio then real estate situated there and owned by a debtor at the time of his death is *not* liable for his simple contract debts. There is no evidence in the record to show what the statute law of Ohio is on this subject. We cannot take judicial notice of it. It must be proved. In the absence of evidence as to what its provisions are or as to whether there is any statute at all, the presumption is that the common law is in force. *State, use of Allen* v. *P. & C. R. R. Co.*, 45 Md. 41. Now, if the decree appealed from be upheld, then one or the other of two results must follow, viz., *first*, that three of the defendants who have been served with process must pay the whole balance of the debt due by Eva Seldner to Katz, in order to save to themselves their three-twelfths interest in the Ohio lands, though under no circumstances could those three be answerable for more than the value of the interests they acquired, or, *secondly*, those same three defendants must proceed to Ohio and there make public sale of their interest in those same lands and then report to a Maryland Court their proceedings in regard thereto and obtain the ratification of that sale by that Court. Whichever of those alternatives may be pursued the result

would ultimately be the same, that is to say, land in Ohio now owned by residents of Maryland would be made liable for the debts of a deceased debtor who held title to that land at the time of her death ; and that land would be so made liable though there is not a particle of evidence in the record to show that by the law of Ohio, real estate of a deceased debtor can be resorted to for the payment of simple contract debts.   There is no precedent for such a proceeding.   Whilst it is true that equity by acting *in personam* may often compel the execution of conveyanees of lands lying beyond the limits of the State, and that this may be done under bills for specific performance, it obviously cannot decree the sale of foreign lands in such circumstances as are disclosed by this record ; nor can it make the heir at law or a devisee or purchaser accountable for a decedent's debts in the absence of all evidence showing that the land of such decedent situated beyond the State is, under the law of the State where it is located, answerable for the decedents' indebtedness.   The Court below was, consequently, without jurisdiction to enter the decree appealed from, and hence that decree must be reversed.

> *Decree reversed with costs above and below and bill dismissed.*