12 A.3d 1207

## C. PHILLIP JOHNSON FULL GOSPEL MINISTRIES, INC.

v.

## INVESTORS FINANCIAL SERVICES, LLC.

No. 115, Sept. Term, 2008.

Court of Appeals of Maryland.

Jan. 28, 2011.

Eric H. Kirchman (Kirchman & Kirchman, Washington, D.C.), on brief, for appellant.

Jeffrey B. Fisher (The Fisher Law Group, PLLC, Upper Marlboro, MD) on amicus curiae brief.

Alan D. Eisler (Meyers, Eisler & Leathman, LLC, Rockville, MD), on brief, for appellee.

Debra Gardner, Esq., Jessica Weber, Esq., Francis D. Murnaghan Appellate Advocacy Fellow, Public Justice Center, Baltimore, MD, for Amicus Curiae brief of Public Justice Center.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BATTAGLIA, J.

This case may best be compared to "The Never Ending Story," [1] as it has been briefed and argued before this Court on three separate occasions, beginning with our original grant of certiorari on the issue of consideration and followed by our issuance of orders requesting additional briefs on jurisdiction and thereafter, again, on the validity of deeds in lieu of foreclosure when executed at the time of settlement of a loan. We have now reached the end of our journey.

The instant contretemps involves a lender, Investors Financial Services, LLC ("Investors"), a Maryland company with its principal place of business in Silver Spring, and a borrower, C. Phillip Johnson Full Gospel Ministries, Inc. ("Ministries"), which executed a Deed in Lieu of Foreclosure regarding land

---

1. This is a reference to the popular children's novel by German author Michael Ende, later made into a film, in which Bastian Bux, with the help of Atreyu and Falkor, embarks on an epic adventure to save the land of Fantastica (Fantasia in the film version). *See* Michael Ende, The Never Ending Story (Doubleday 1983); The Never Ending Story (Warner Brothers Pictures 1984).

in Martinsville, Virginia. Ministries, in a four-count Complaint seeking damages for breach of contract and for declaratory relief, had challenged the validity of the Deed in Lieu in the Circuit Court for Montgomery County, on the basis that the Deed in Lieu was not supported by consideration. After the Circuit Court ruled that no consideration was required because the Deed in Lieu was executed under seal, Ministries noted an appeal to the Court of Special Appeals, raising the following question:

1. Is a contract under seal, which recites the consideration upon which it is to be supported valid, even though the consideration is not given?

Prior to any proceedings in the intermediate appellate court, we granted certiorari on our own initiative. *Gospel Ministries v. Investors Financial*, 406 Md. 443, 959 A.2d 792 (2008).

■ After oral argument, we requested that the parties submit supplemental briefs addressing two additional questions:

1. On what legal and factual bases may the Maryland courts exercise jurisdiction and venue over the subject matter and relief sought in this matter?

2. Can a declaratory judgment action be used to litigate defenses to a foreclosure action?

After re-argument on these issues, "in light of recent statutory reforms in foreclosure law," we again ordered that briefing and re-argument be scheduled and invited the submission of *amicus curiae* briefs,[2] on the following additional and what will ultimately turn out to be the dispositive issue:

Is a deed in lieu of foreclosure executed as a precondition to originating a loan, before any default in the loan, valid under Maryland law, to support conveyance of marketable title upon default, but without foreclosure, in light of the borrower's equity of redemption, *see, e.g., Restatement*

---

**2.** *Amicus Curiae* briefs were submitted by Jeffrey B. Fisher of the Fisher Law Group and Debra Gardner and Jessica Weber of the Public Justice Center. Mr. Fisher was ceded time to argue by Ministries.

*(Third) of Property: Mortgages,* Sec. 3.1(b), cmt. a; *see also*
Md.Code (1974 Vol.), Sec. 7–101(b) of the Real Property
Article; *Simard v. White,* 383 Md. 257, 269–90, 859 A.2d
168, 175–97 (2004)?

We shall vacate the judgment of the Circuit Court for Mont-
gomery County because, under Maryland law, a deed in lieu of
foreclosure may not be executed at the outset of a mortgage,
before any default occurs, as it clogs the equity of redemption.

The present case began with a purchase of improved land
("Property") located in Martinsville, Virginia, by Ministries
from the Catholic Diocese of Richmond, to be used as a
church. Ministries turned to Investors, a Maryland limited
liability company with its principal place of business in Silver
Spring, Montgomery County, Maryland, to obtain financing.
As part of the financing, Ministries issued a Promissory Note
to Investors for $93,000, which was used to finance the Prop-
erty. The Note was secured by two deeds: a Deed of Trust,
which included an acceleration clause containing a Power of
Sale,[3] as well as a Deed in Lieu of Foreclosure, which Minis-
tries also was required to execute at closing. The Deed in
Lieu purported to grant to Investors title to the Property "in
order to avoid foreclosure of the . . . Deed of Trust," immedi-

---

**3.** The acceleration clause provided, in relevant part:
   9. ACCELERATION. That Grantor's failure to perform any of his
   obligations under this Deed of Trust or under said Note shall consti-
   tute a default and all indebtedness secured hereby shall immediately
   become due and payable at the option of the holder of said Note. Any
   time thereafter, at the request of the holder of said Note, the Trustees,
   either one of whom may act, shall have the power and it shall be their
   duty to sell said land and premises or any part thereof at public
   auction in such manner, at such time and place, upon such terms and
   conditions, and upon such public notice as the Trustees may deem
   best for the interest of all concerned, consisting of advertisement in a
   newspaper of general circulation in the county or city in which the
   Properties are located for such period as applicable law may require
   and, in case of default of any purchaser, to re-sell with such post-
   ponement of sale or re-sale and upon public notice thereof as the
   Trustees may determine and upon judicial approval as may be re-
   quired by law, convey said land and premises in fee simple to and at
   the cost of the purchaser, who shall not be liable to see to the
   application of the purchase money; and from the proceeds of the
   sale. . . .

ately upon default for any reason. The Deed in Lieu provided, in relevant part:

THIS DEED IN LIEU OF FORECLOSURE, made this, by and between **C. Phillip Johnson Full Gospel Ministries, Inc., a Washington, D.C. corporation,** party (ies) of the first part, and **Investors Financial Services, LLC** party (ies) of the second part:

WHEREAS, the party (ies) of the first part is the obligor named in a separate Note dated April 5, 2005 in the original principal sum of **Ninety-three Thousand and zero cents ($93,000.00)** which Note is secured by a Deed of Trust dated April 5, 2005 and to be recorded among the Land Records of the Commonwealth of Virginia, City of Martinsville; and

WHEREAS, the party (ies) of the second part are the holders of the aforesaid Note and the secured party (ies) under the aforesaid Deed of Trust; and

WHEREAS, for diverse reasons, the party of the first part has been unable to pay the indebtedness evidenced by the aforesaid Note as the installments have become due and payable and has been unable to perform the several covenants set forth in the aforesaid Deed of Trust; and

WHEREAS, in order to avoid foreclosure of the aforesaid Deed of Trust, the party (ies) of the first part desires to convey the subject property to the parties of the second part in exchange for the cancellation of the existing indebtedness owed to the parties of the second part in the amount of the debt owed;

NOW, THEREFORE, in consideration of the relinquishment of indebtedness, and other good and valuable consideration, receipt of which is hereby acknowledged, the party of the first part does hereby grant unto parties of the second part in fee simple, all that piece or parcel of land, together with the improvements, rights, privileges and appurtunances to the same belonging, situate in the Commonwealth of Virginia, described as follows to wit:

SEE ATTACHED LEGAL DESCRIPTION

Also known as: 704 East Church Street, Martinsville, Virginia 24112

Subject to covenants, easements, and deeds of trust and restrictions of record.

AND the said party (ies) of the first part covenants that he/she/it/they will warrant specially the property hereby conveyed; and that it will execute such further assurances of said land as may be requisite.

Although granted at the time of loan origination, the Deed in Lieu was phrased in the present perfect tense: "WHEREAS, . . . [Ministries] *has been* unable to pay the indebtedness evidenced by the aforesaid Note as the installments *have become* due and payable and *has been* unable to perform the several covenants set forth in the aforesaid Deed of Trust[,]" (emphasis added), was executed under seal and was held in escrow by Investors. The Disclosure Statement for the Deed in Lieu provided:

The undersigned Borrower hereby acknowledge [sic] and agree [sic] as follows:

1. As a part of the financing for the property known as 704 East Church Street, Martinsville, Virginia 24112 by Investors Financial Services, LLC in the amount of **$93,000.00** on **April 5, 2005** the Borrower have [sic] executed a Deed in Lieu of Foreclosure;

2. The Deed in Lieu of Foreclosure conveys title to the property to Investors Financial Services, LLC;

3. Investors Financial Services, LLC will hold the Deed in Lieu of Foreclosure and not record it in the land records so long as Borrower is not in default in the repayment of the financing;

4. Investors Financial Services, LLC will record the Deed in Lieu of Foreclosure and take over title to the property if the Borrower are [sic] two (2) payments past due and have [sic] not made satisfactory payment arrangements;

5. If the Borrower are [sic] past due, it is the Borrower's responsibility to contact [Lender's Counsel] to make satisfactory payment arrangements;

6.   If the Borrower do [sic] not contact [Lender's Counsel], no further notice will be given to the Borrowers [sic] before the Deed in Lieu of Foreclosure is recorded;

7.   Once the Deed in Lieu of Foreclosure is recorded, the Borrowers [sic] will no longer own the Property and the debt will be cancelled.

Several months later, Ministries defaulted on the Note, and Investors recorded the Deed in Lieu in the land records of Virginia, without any foreclosure proceedings. Ministries filed a four-count Complaint in the Circuit Court for Montgomery County, Maryland. One count alleged breach of contract, which was premised on the theory that Investors was "required by the terms of the contract" to conduct a public sale of the Property, rather than simply record the Deed in Lieu, stating, in relevant part:

12.   Investors materially breached its Contract with the Ministries by filing [sic] to have the real property sold at a public sale as required by the terms of the contract of the parties.[4]

Ministries sought damages in the amount of $200,000 plus interest on its breach of contract count. Another count seeking a declaratory judgment under Section 3–409 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl.Vol.),[5] asked the Circuit Court to determine whether the

---

4.   Under the general allegations of the Complaint, Ministries alleged:

6.   Among other terms and provisions of the Deed of Trust was one that should Ministries default then the real property would be sold, by the trustee appointed in the Deed of Trust, at a public sale.

5.   Section 3–409 of the Courts and Judicial Proceedings Article provides, in relevant part:

§ 3–409.   **Discretionary relief.**
(a) *In general.*—Except as provided in subsection (d) of this section, a court may grant a declaratory judgment or decree in a civil case, if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if:
(1)  An actual controversy exists between contending parties;
(2)  Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation;  or

Deed in Lieu was invalid for lack of consideration.[6]  The other two original counts, alleging breach of contract regarding late fees and unjust enrichment, were dismissed with prejudice by the Circuit Court Judge and are not part of this case.

The parties filed cross motions for summary judgment. Investors contended that the circuit court lacked "subject matter jurisdiction to invalidate the deed in lieu of foreclosure because it was recorded in Martinsville, Virginia."  Ministries countered that jurisdiction was proper under Section 3–409 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl.Vol.).  The Circuit Court denied the motions for summary judgment.

During the ensuing bench trial, Ministries argued that the Deed in Lieu was invalid because the consideration recited in the Deed had not occurred at the time the Deed was granted. Investors countered that consideration supporting the contract, which included the Deed in Lieu as part of its terms, was provided by the loan, and that, moreover, all the instruments at issue had been executed under seal, which itself was sufficient consideration.  The circuit court bypassed the jurisdictional question and ruled that, because the contract be-

---

(3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it.

\*        \*        \*

(c) *Concurrent remedies not bar for declaratory relief.*—A party may obtain a declaratory judgment or decree notwithstanding a concurrent common-law, equitable, or extraordinary legal remedy, whether or not recognized or regulated by statute.

6.  In Count II of its Complaint, Ministries stated, in relevant part:

15.  Ministries contends that the Deed in Lieu of Foreclosure is invalid in that it was entered into without consideration as required by law.

16.  That Investors has recorded said Deed transferring ownership of the real property from Ministries to itself.

\*        \*        \*

19.  A declaratory judgment by this Court will end the controversy. **WHEREFORE,** [Ministries] demands:

a.  That this Court determine the validity of the Deed in Lieu of Foreclosure recorded by Investors on or about November 6, 2006; . . . .

tween the parties had been executed under seal, there was adequate consideration. Judgment was entered in favor of Investors.

The first question presented before us deals with consideration. Because we hold that a Deed in Lieu of Foreclosure, executed at the time of the origination of a loan, is a mortgage, and that under the circumstances of this case, foreclosure proceedings must have been initiated before Ministries's interest in the property was extinguished, we need not address this question.

The second set of questions regarding jurisdiction is more complex. With respect to the declaratory judgment count, as both parties herein conceded in their supplemental briefs and at argument, such an action seeking to invalidate a deed recorded in the land records of Virginia cannot lie in Maryland. *See Wilmer v. Philadelphia & Reading Coal & Iron Co.,* 130 Md. 666, 675, 101 A. 538, 542 (1917); *Seldner v. Katz,* 96 Md. 212, 219–20, 53 A. 931, 933 (1903); *White v. White,* 7 G. & J. 208, 210 (1835). *See also Epstein v. Epstein,* 193 Md. 164, 175, 66 A.2d 381, 385 (1949) ("No judgment or decree, except a judgment or decree of a Maryland court, state or federal, can directly operate upon title to, or possession of, Maryland land.").

With respect to the breach of contract action, however, the contract between Ministries and Investors involved a company with its principal place of business in Maryland. As a result, a "transitory action"[7] regarding Ministries's allegation that Investors failed to utilize its obligation under the contract to utilize the remedy of judicial foreclosure, could lie in Maryland. *See Texaco, Inc. v. Vanden Bosche,* 242 Md. 334, 338, 219 A.2d 80, 82 (1966) ("[A] transitory cause of action could, and generally would, be decided outside the jurisdiction of its origin by any court in any other forum which had jurisdiction of the subject matter and the parties.").

---

7. A "transitory action" is "[a]n action that can be brought in any venue where the defendant can be personally served with process." Black's Law Dictionary 36 (9th ed.2009).

The dispositive issue, nevertheless, is whether a deed in lieu of foreclosure, executed at the origination of a loan, is valid as an absolute conveyance, rather than a mortgage, under Maryland law. We will also address whether a deed in lieu of foreclosure is valid, in this scenario, also under Virginia law, because of the provision in the Deed of Trust regarding the law that governs disputes between the parties:

19. GOVERNING LAW; SEVERABILITY. This Deed of Trust shall be governed by the laws of the jurisdiction in which the Property is located. If any provision or clause of this Deed of Trust or the Note conflicts with applicable law such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision. To this and [sic] the provisions of the Deed of Trust and the Note are declared to be severable.

Of course, in applying Virginia law, we do so without hubris, recognizing that nothing we opine about herein could, in any way, be binding on any Virginia tribunal.

With respect to the Deed in Lieu, Ministries argues that, "[i]n order for a Deed in Lieu of Foreclosure entered into as a precondition to a mortgage loan and prior to any default in the mortgage loan to convey marketable title," it would have to impermissibly "terminate the mortgagor's equity of redemption in the property." Accordingly, Ministries argues, the Deed in Lieu in the present matter was invalid, as it was executed at the outset of the mortgage prior to Ministries' default.[8] Conversely, Investors contends that Ministries never lost its equity of redemption, arguing that it "had the right to redeem the Property outside the Deed in Lieu (pursuant to the Disclosure Statement) by either paying the two or more months in arrears or making other satisfactory payment arrangements with [Investors]."

---

8. *Amicus* Fisher contends that the judgment in the present case should be vacated and the case remanded for further proceedings, asserting:

Courts have universally held that when a mortgagor executes a deed in lieu of foreclosure as part of the initial mortgage transaction with instructions that the mortgagee can record the instrument in the event of future default, such a deed ... is void.

For centuries, courts of equity have recognized a mortgagor's right, in an event of default, to tender payment in full at any time prior to foreclosure, thereby retaining title to her property, and barring that, to recover the proceeds (if any) from the ensuing foreclosure sale, after satisfying the obligations to the mortgagee and other lienholders. This right, uniformly recognized in the Anglosphere since late medieval times, is called the equity of redemption. See *Simard v. White*, 383 Md. 257, 269–90, 859 A.2d 168, 175–87 (2004), in which Judge Dale R. Cathell, writing for this Court, gives a historical overview of mortgages and deeds of trust. *See also* Restatement (Third) of Property: Mortgages § 3.1 cmt. a (1997) (outlining the origins of the doctrine in English Chancery).

Courts have consistently refused to recognize creditors' attempts to cut off that right as a precondition for originating a mortgage. Kenneth C. Kettering, *True Sale of Receivables: A Purposive Analysis*, 16 Am. Bankr.Inst. L.Rev. 511, 527 (2008) (explaining the origin of the right to equity of redemption in "the deeply engrained unwillingness of the equity courts to abide a forfeiture"); John C. Murray, *Mortgage Workouts: Deeds in Escrow*, 41 Real Prop. Prob. & Tr. J. 185, 187–88 (2006) (outlining the common law rule invalidating deeds in escrow created as part of the original mortgage).

The Restatement (Third) of Property: Mortgages summarizes the common law rule, known as the prohibition against "clogging" [9] the equity of redemption, as follows:

---

9. The term "clogging" is widely used to describe various schemes to strip a mortgagor's right to redeem her equity in the event of a foreclosure. The doctrine against "clogging" the so-called equity of redemption arose in the English Courts of Chancery, as an attempt to ameliorate the harsh result that obtained in the law courts in medieval England, before the concept of a mortgage had evolved. Before the adoption of the "anti-clogging" doctrine, a landowner wishing to borrow while pledging his land as security would deed the land outright to his creditor, in exchange for a stated sum of money, subject to the condition that if the landowner (borrower) repaid the creditor on a future specified day (called "law day"), title would revert to the borrower. If for any reason (even if he could not find the creditor) the

### § 3.1 The Mortgagor's Equity of Redemption and Agreements Limiting It.

(a) From the time the full obligation secured by a mortgage becomes due and payable until the mortgage is foreclosed, a mortgagor has the right to redeem the real estate from the mortgage under the principles of § 6.4.

(b) *Any agreement in or created contemporaneously with a mortgage that impairs the mortgagor's right described in Subsection (a) of this section is ineffective.*

(c) An agreement in or created contemporaneously with a mortgage that confers on the mortgagee an interest in mortgagor's real estate does not violate this section *unless*

---

borrower failed to pay on "law day," he forfeited his title, regardless of whether the debt owed bore any reasonable relation to the value of the land.

By the sixteenth century, courts of equity invoked the "anti-clogging" rule to avoid this harsh result and began to permit late payment. Later, the rule developed that both parties were entitled to the protection of a foreclosure sale, with any excess payable to the defaulting borrower, and conversely, permitting entry of a deficiency judgment in favor of the creditor in case the sale proceeds were insufficient to satisfy the loan obligation. From this beginning, the modern idea of a mortgage secured by a deed of trust evolved. *See Simard v. White*, 383 Md. 257, 269–90, 859 A.2d 168, 175–87 (2004) (Judge Dale R. Cathell, writing for the Court, gives a historical overview of mortgages and deeds of trust.); Kenneth C. Kettering, *True Sale of Receivables: A Purposive Analysis*, 16 Am. Bankr.Inst. L.Rev. 511, 527 (2008); Restatement (Third) of Property: Mortgages § 3.1 cmt. a (1997).

The Restatement further elaborates:

Courts sometimes use alternative characterizations of the clogging rule. "Once a mortgage, always a mortgage" is the most common alternative. It is also sometimes stated that "a mortgage cannot be made irredeemable." Whatever the language of the clogging concept, courts traditionally have been hostile to clauses and devices that purport to recognize the equity of redemption, but whose practical effect is to nullify or restrict its operation. This hostility is rooted in a judicial desire to protect "impecunious landowners." Equally important is a judicial inclination to protect the mortgagor against misplaced optimism and overconfidence concerning future ability to satisfy commitments.

Restatement (Third) of Property: Mortgages § 3.1 cmt. a.

*its effectiveness is expressly dependent on mortgagor default.*

Emphasis added.

The cases supporting this principle are legion. The Supreme Court long ago set forth the basic idea in *Peugh v. Davis,* 96 U.S. (6 Otto) 332, 337, 24 L.Ed. 775, 776 (1878), where the Court explained that it is "an established doctrine" that a mortgagor's equity of redemption is "inseparably connected with a mortgage," and that, furthermore, *"[t]his right cannot be waived or abandoned by any stipulation of the parties made at the time, even if embodied in the mortgage."* (emphasis added). *See also* Murray, *supra,* at 188 n. 9 (collecting cases).

Indeed, the *Peugh* Court stated that this doctrine was inviolate. 96 U.S. (6 Otto) at 337, 24 L.Ed. at 776 ("This is a doctrine from which a court of equity *never* deviates.") (emphasis added). *See Washington Fire Ins. Co. v. Kelly,* 32 Md. 421, 440 (1870) ("Courts of Equity, though a mortgage be forfeited, and the estate absolutely vested in the mortgagee, at common law, yet they will allow the mortgagor, at any reasonable time, to redeem his estate.... Nor will they permit a conveyance made to secure a debt, to operate for any other purpose than to secure the debt; *the conveyance will be considered as merely holding the property as pledged, and no agreement in a mortgage will be suffered to make the property irredeemable."*) (emphasis added); *accord* Restatement (Third) of Property: Mortgages § 3.1 cmt. b (*"If 'clogging' were routinely permitted by agreement of the parties, there is a strong likelihood that foreclosure sales would disappear and debtors would lose the long-recognized right to have their real estate taken only after its value is tested by a public sale."*) (emphasis added).

■ The instant case is wholly different from a loan workout, where a mortgagor and mortgagee negotiate *after* an event of default already has occurred. After a mortgagor defaults on a note, she may legitimately contract with the noteholder to execute a conveyance, in exchange for adequate

consideration, so long as there is no overreaching. *See, e.g.,* *Peugh,* 96 U.S. (6 Otto) at 337, 24 L.Ed. at 776 ("A *subsequent release* of the equity of redemption may undoubtedly be made to the mortgagee. . . . *The transaction will,* however, *be closely scrutinized, so as to prevent any oppression of the debtor."*) (emphasis added); *Simard,* 383 Md. at 272 n. 12, 859 A.2d at 177 n. 12 (*"The right to redeem,* even in a mortgage context, *can be itself divested* by a valid mortgage foreclosure sale, or *by a waiver made subsequent to, and outside the mortgage instrument itself."*) (emphasis added).

■  After a mortgagor defaults, she may negotiate a "short sale" to avoid a deficiency judgment, *i.e.,* further indebtedness persisting even after the proceeds from a foreclosure sale have been distributed. To require the borrower, however, as a condition of obtaining financing, to surrender the equity of redemption *in advance* places the lender in a "heads I win, tails you lose" position. In situations where the borrower had made substantial payments on the loan, or where the property greatly appreciated in value, the lender would record the deed in lieu rather than file for foreclosure. If the borrower's equity in the property were insufficient, the lender would still have its traditional remedies under the deed of trust with power of sale.

■  In the present case, Investors required Ministries to execute an escrow deed *at the time of loan origination,* as a precondition for granting the loan. In so doing, Investors cut off Ministries' right to its equity of redemption *from the outset.* Courts of equity have abhorred such overreaching for hundreds of years. Under Maryland law, the Deed in Lieu would have to be regarded as a mere mortgage and could not effectively convey the land to Investors absent a foreclosure action, in spite of what the Deed in Lieu purports to state on its face. The Real Property Article codifies the buyer's long-settled right to the equity of redemption. The relevant statute is Section 7–101 of the Real Property Article, Maryland

Code (1974, 2003 Repl.Vol.),[10] which, at the time the Deed in Lieu was executed, stated, in relevant part:

**§ 7–101. When deed absolute in terms to be considered a mortgage; assignment of mortgages as security; certain security interests perfected.**

(a) *When deed absolute in terms to be considered a mortgage.—Every deed which by any other writing appears to have been intended only as security for payment of an indebtedness or performance of an obligation, though expressed as an absolute grant is considered a mortgage.* The person for whose benefit the deed is made may not have any benefit or advantage from the recording of the deed, unless every other writing operating as a defeasance

---

10. The full text of the statute stated as follows:

§ 7–101. **When deed absolute in terms to be considered a mortgage; assignment of mortgages as security; certain security interests perfected.**

(a) *When deed absolute in terms to be considered a mortgage.*—Every deed which by any other writing appears to have been intended only as security for payment of an indebtedness or performance of an obligation, though expressed as an absolute grant is considered a mortgage. The person for whose benefit the deed is made may not have any benefit or advantage from the recording of the deed, unless every other writing operating as a defeasance of it, or explanatory of its being intended to have the effect only of a mortgage, also is recorded in the same records at the same time.

(b) *Assignment of mortgages as security.*—Subsection (a) of this section is not applicable to the grant of a security interest in a mortgage by a mortgagee, or one of several mortgagees, or any assignee of his interest in a mortgage as security for payment of an indebtedness or performance of an obligation. Such a transaction is governed by Title 9 of the Maryland Uniform Commercial Code.

(c) *Certain security interests perfected.*—Notwithstanding any provision of Title 9 of the Maryland Uniform Commercial Code to the contrary, if a security interest in a mortgage was attached and perfected before July 1, 2001, in accordance with subsection (b) of this section as in effect before July 1, 2001, then the security interest shall continue to be perfected after July 1, 2001, without the need for any additional filing in the land records in the county where the mortgage is recorded, and without the need for any additional filing otherwise required under Title 9 of the Maryland Uniform Commercial Code.

The current iteration of Section 7–101 of the Real Property Article, Maryland Code (1974, 2010 Repl.Vol.), contains identical language.

of it, or explanatory of its being intended to have the effect only of a mortgage, also is recorded in the same records at the same time.

Emphasis added.

Obviously, as Investors itself admitted, the only purpose of the Deed in Lieu was to grant additional security to the lender *at the time of loan origination.* Thus, Section 7–101 of the Real Property Article would mandate that the Deed in Lieu be "considered a mortgage," and Investors would have to file a foreclosure action or negotiate with Ministries to execute an effective (new) Deed in Lieu, supported by adequate consideration, based on the parties' circumstances and bargaining power *at the time of default.*

Although not strictly necessary to the analysis, we think it highly significant that a statute similar to Section 7–101(a) of the Real Property Article has been codified in Maryland since 1825. Prior to the 1974 codification of the Real Property Article, its predecessor had been enacted and codified as Section 7–101 of Article 21, Maryland Code (1957, 1973 Repl. Vol.). 1972 Maryland Laws, Chapter 349, Section 1. Prior to the 1972 act, the same statute appeared in Section 1 of Article 66, Maryland Code (1957, 1968 Repl.Vol.). The same statute, with the same designation, had appeared in prior codifications going back to 1888.[11] In *Kelly,* an 1870 decision, this Court cited Section 20 of Article 64, Maryland Code (1860), as authority for the same proposition. 32 Md. at 440. The

---

11. The 1888 version of the statute stated as follows:

Every deed conveying real estate or chattels, which by any other instrument or writing shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage, and the person for whose benefit such deed shall be made shall not have any benefit or advantage from the recording thereof, unless every instrument and writing operating as a defeasance of the same, or explanatory of its being designed to have the effect only of a mortgage or conditional deed, be also therewith recorded.

Md.Code (1888), Art. 66, § 1.

earliest version of the statute was enacted in 1825. 1825 Maryland Laws, Chapter 203, Section 2.[12]

The long-standing existence of a Maryland statute construing a conveyance as a mortgage, when it appears to have been created solely as security for a loan, is powerful evidence that the escrow deed finance arrangement used by Investors is deeply repugnant to the public policy of this State.

Unlike Maryland, Virginia has not codified the prohibition against "clogging" the equity of redemption, but it appears to be a part of its common law. Nearly contemporaneously with *Peugh*, in which the Supreme Court recognized the "anti-clogging" doctrine, the Supreme Court of Virginia adopted the same view. *Snavely v. Pickle*, 70 Va. 27 (1877). In *Snavely*, the court observed that the equity of redemption "[was] an inseparable equitable incident of every mortgage . . . . and *cannot be defeated, restrained, evaded, or in any way impaired by agreement of parties as long as the mortgage continues a security.*" *Id.* at 35 (emphasis added). *See also In re: Greene*, No. 06–33811–KRH, Chapter 13, Adv. Pro. No. 07–03004–KRH, Adv. Pro. No. 07–03018–KRH, 2007 WL 1309047, at *4–5, *5 n. 9, 2007 Bankr.LEXIS 2021, at *15, *15 n. 9 (Bankr.E.D.Va.2007) (collecting cases).

Research reveals only one other Virginia reported opinion besides *Snavely* that addresses the issue. That case, *Dawson v. Perry*, 30 Va. Cir. 372 (Va.Cir.1993), is instructive. In *Dawson*, a debtor successfully challenged the validity of a deed in lieu of foreclosure that had been executed at the time of loan origination. *Id.* The debtor, Sally Dawson, had lived at

---

12. The earliest statute was virtually identical to the 1888 version:

> *And be it enacted,* That every deed conveying real estate or chattels, which by any other instrument or writing, shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage, and the person or persons for whose benefit such deed shall be made, shall not have any benefit or advantage from the recording thereof, unless every instrument and writing, operating as a defeasance of the same, or explanatory of its being designed to have the effect only of a mortgage, or conditional deed be also therewith recorded.

1825 Md. Laws, Chap. 203, § 2.

her home from 1969 until 1986, when the property was fore-closed upon. *Id.* The purchaser at the foreclosure sale as-signed its rights to Perry. *Id.*

Dawson had received approximately $9,000 from the foreclo-sure sale and wished to use that money as a down payment to buy back her house. She and Perry entered into a purchase agreement in 1986, which provided that Dawson would rent the property until settlement. Settlement took place in 1990. *Id.* On March 19, 1990, Perry conveyed the property to Dawson, who executed two deeds in favor of Perry. One was a deed of trust; the second deed conveyed the property back to Perry. A separate letter agreement, executed the same day, provided that Perry would hold the latter deed in escrow and record it if Dawson became two months delinquent in her payments. Perry "characterize[d] this arrangement as a 'deed in lieu of foreclosure.' " *Id.* at 373.

Dawson subsequently missed two consecutive payments, and Perry recorded the deed on May 22, 1990. He then sold the property to a *bona fide* purchaser in April of 1991. Consequently, Dawson "lost all of her equity by entering into this arrangement instigated by Perry." *Id.*

Dawson filed suit, contesting the validity of the deed in lieu of foreclosure, "arguing that it impermissibly cut off her equity of redemption." *Id.* Perry countered that Dawson had "validly contracted away her equity of redemption in consider-ation of his providing financing for the transaction." *Id.* Thus, *Perry had used the exact same financing arrangement used here by Investors.*

The court relied on *Snavely v. Pickle*, "[t]he only Virginia authority on the subject," 30 Va. Cir. at 373, and also consult-ed several out-of-state authorities,[13] which "buttressed the

---

13. In *First Illinois National Bank v. Hans*, 143 Ill.App.3d 1033, 98 Ill.Dec. 150, 493 N.E.2d 1171 (1986), the Appellate Court of Illinois construed an assignment of an interest in land, granted by mortgagors to a bank, created as security for a loan, and which provided that in event of default, the mortgagors would execute a quitclaim deed in favor of the bank, as creating instead an equitable mortgage. Conse-

court's initial belief ... that a deed in lieu of foreclosure is *normally executed after default, when foreclosure is threatened." Id.* at 374. (emphasis added). The court ruled that the deed in lieu of foreclosure was ineffective to convey Dawson's equity of redemption and awarded her damages of $26,138, "the value of her equity of redemption which was denied her by Perry." *Id.* at 376.

Although one can only speculate as to the reason Investors required the Deed in Lieu to be executed under seal, it may well be that they hoped to evade the ruling in *Dawson,* which at least colorably could be read as based in part on the fact that in that case, "[t]here was simply no new consideration[.]" *Id.* In any event, under "jealous scrutiny," *Snavely,* 70 Va. at 35, we refuse to elevate form over substance.

Our analysis is supported overwhelmingly by authority from other jurisdictions. In Part II of his law review article entitled "Deed in Escrow in Connection with Original Mortgage," *supra,* Murray surveys cases from all over the United States, all of which hold that, "when a mortgagor places a

---

quently, the court determined that the contractual provision requiring the mortgagors to execute the quitclaim deed "must be declared null and void." *Id.,* 98 Ill.Dec. 150, 493 N.E.2d at 1174. The court rejected the bank's argument that a mortgagee can take a deed in lieu of foreclosure, because the authority relied upon by the bank applied only to a *subsequent* conveyance. *Id.,* 98 Ill.Dec. 150, 493 N.E.2d at 1175 ("That is a far different situation from the one presented here where the mortgage itself *required* the mortgagor to execute a deed upon the occurrence of a default.").

The *Dawson* court contrasted *Hans* with *Ringling Joint Venture II v. Huntington National Bank,* 595 So.2d 180, 182–83 (Fla.Dist.Ct.App. 1992) (per curiam), which upheld a deed in lieu of foreclosure because it was part of "an agreement *subsequent* to the promissory notes and mortgages involved in the earlier foreclosure proceeding ... [and] was given to avoid foreclosure.... Ringling received *valuable new consideration* to relinquish its right of redemption." (emphasis added). Even so, the Florida court "emphasize[d] that the agreements used in this case could easily result in abuse or inequity in another case under other facts." *Id.* at 183. Thus, the court disavowed giving "general approval for the use of such documents in resolving other foreclosure proceedings[, explaining instead that] [s]uch arrangements should be *carefully scrutinized* to assure that they do not violate the favored right of redemption." *Id.* (emphasis added).

deed in escrow in connection with the initial mortgage transaction, with instructions to release the deed to the mortgagee immediately in the event of a future default, the deed is void and unenforceable." Murray, *supra*, at 187. This result is grounded on general equitable and public policy grounds. *Id.*

In *Basile v. Erhal Holding Corp.*, 148 A.D.2d 484, 538 N.Y.S.2d 831 (1989), the mortgagee required the mortgagor to execute a deed in escrow as part of a consumer mortgage and, when the borrower defaulted, the mortgagee recorded the deed. The trial court ruled that the borrower had waived her right of redemption and denied her motion for an order requiring the mortgagee to deliver the deed and declare the mortgage void. *Id.* at 833. The Appellate Division modified the decree, construing the deed in lieu of foreclosure as a mortgage, holding that the trial court had "erred in declaring that the plaintiff waived her right of redemption in the demised premises[,]" because "[a] deed conveying real property, although absolute on its face, will be considered to be a mortgage when the instrument is executed as security for a debt". *Id.* The appellate court cited, in addition to a string of Court of Appeals (of New York) decisions, a statute, N.Y. Real Property Law § 320,[14] which is substantially similar to Section 7–101(a) of the Real Property Article. *See id.* The appellate court explained the rationale behind this rule by quoting the passage from *Peugh*, discussed *supra.*

This holding was confirmed in *Leonia Bank v. Kouri*, 3 A.D.3d 213, 772 N.Y.S.2d 251 (2004), in the context of a divorce and separation agreement, where the court noted that "the giving of a deed to secure a debt, in whatever form and

---

14. The New York statute states as follows:

   § 320. **Certain deeds deemed mortgages**

   A deed conveying real property, which, by any other written instrument, appears to be intended only as a security in the nature of a mortgage, although an absolute conveyance in terms, must be considered a mortgage; and the person for whose benefit such deed is made, derives no advantage from the recording thereof, unless every writing, operating as a defeasance of the same, or explanatory of its being desired to have the effect only of a mortgage, or conditional deed, is also recorded therewith, and at the same time.

however structured, creates nothing more than a mortgage." *Id.* at 254. Consequently, the court held that "[t]he holder of a deed given as security must proceed in the same manner as any other mortgagee—by foreclosure and sale—to extinguish the mortgagor's interest. . . ." *Id.*

It also is noteworthy that, in the opinion of the appellate court, the New York statutory analog of 7–101(a) of the Real Property Article, Maryland Code (1974, 2003 Repl.Vol.), "codifies the common law as enunciated in cases for over a century." 772 N.Y.S.2d at 254. This further confirms that the Deed in Lieu in the present case would be construed as a mortgage under Virginia law.

*First Illinois National Bank v. Hans,* 143 Ill.App.3d 1033, 98 Ill.Dec. 150, 493 N.E.2d 1171 (1986), held similarly. In that case, the Appellate Court of Illinois construed an assignment, which had been created as a security interest, as an equitable mortgage. *Id.,* 98 Ill.Dec. 150, 493 N.E.2d at 1172. In particular, the court held that a contractual provision requiring the mortgagors to execute a quitclaim deed in favor of the bank, in case of default, "must be declared null and void[,]" because that provision cut off the mortgagors' equity of redemption. *Id.,* 98 Ill.Dec. 150, 493 N.E.2d at 1174.

*Larson v. Hinds,* 155 Colo. 282, 394 P.2d 129 (1964), is to similar effect. In that case, Hinds filed an action in unlawful detainer, alleging that the defendants were tenants who had failed to pay rent, and praying for a writ of possession and past rent due. *Id.* at 130–31. The defendants' answer included the affirmative defense that they were owners and mortgagors, not tenants. *Id.* at 131.

The pertinent facts were: in 1955, defendants Jennie Bloomquist, George Larson, Beatrice Larson, Walter Larson and Vernon Larson executed a warranty deed whereby they conveyed real property to the plaintiff, Hinds, subject only to a first deed of trust to the Midland Savings and Loan Association; at the same time, the defendants made a promissory note payable to Hinds in the principal amount of $800.00; and, also at the same time, the parties executed an escrow agree-

ment whereby the Larsons and Jennie Bloomquist agreed to pay to Hinds the principal amount of the note, together with interest at the rate of 1% per month, within sixty days. *Id.* at 131. The agreement included "Schedule A," which provided that, if the borrowers "fail to perform in accordance with the terms and conditions of this agreement and the note of even date herewith and hereto attached," the escrow holder shall "immediately" deliver the warranty deed to Hinds, "without notice to the parties of the first part," *i.e.,* the Larsons and Ms. Bloomquist, and that the transaction shall be regarded as an absolute conveyance to Hinds. *Id.*

After finding that the Larsons and Bloomquist had defaulted on the note, the trial court construed the terms of this agreement as a contract of sale and entered judgment in favor of Hinds for possession but denied him damages for rent. *Id.* The Supreme Court of Colorado, sitting in Department,[15] construed this arrangement as creating a mortgage and reversed and remanded the case with directions that the trial court enter a decree declaring the warranty deed in favor of Hinds to be a mortgage. *Id.* at 134.

Similar to Maryland and New York, there is statutory authority in Colorado.[16] The court noted that "[t]he only purpose of the escrow was to avoid the necessity of foreclosure and sale in the event of default," and that such a result violated the public policy of Colorado as expressed in the statute. *Id.* at 133 ("The arrangement here deprived the defendants of any redemption rights which the public policy of

---

15. At the time, the Supreme Court of Colorado sat in panels of three justices for some cases.

16. The statutory authority interpreted by the Colorado court, Colo.Rev. Stat. § 118–6–17 (1953), provided as follows:

MORTGAGES, NOT A CONVEYANCE BUT A LIEN.—Mortgages, trust deeds or other instruments intended to secure the payment of an obligation affecting title to or an interest in real property, shall not be deemed a conveyance, regardless of its terms, so as to enable the owner of the obligation secured to recover possession of real property without foreclosure and sale, but the same shall be deemed a lien. *Larson v. Hinds,* 155 Colo. 282, 394 P.2d 129, 133 (1964).

this state guarantees and *amounted to a [forfeiture] which the policy of this state abhors.*") (emphasis added). *See also Guam Hakubotan, Inc. v. Furusawa Inv. Corp.*, 947 F.2d 398, 401 (9th Cir.1991) (noting that Guam Civil Code provision "states the familiar principle of equity and public policy that a mortgagor is not permitted to alienate his right of redemption at the time he enters into a mortgage agreement."); *Marple v. Wyoming Prod. Credit Ass'n*, 750 P.2d 1315, 1320 (Wyo.1988) (holding that a deed held in escrow that was to be conveyed upon default was, in fact, a mortgage and could not terminate mortgagor's right of redemption); *Kartheiser v. Hawkins*, 98 Nev. 237, 645 P.2d 967, 968 (1982) (holding that quitclaim deeds given by mortgagor to mortgagee at time of delivery of deeds of trust were merely further security for mortgage loan and did not surrender grantor's equity of redemption); *Lincoln Mortg. Investors v. Cook*, 659 P.2d 925, 927 (Okla.1982) ("Simply stated, the [clogging] doctrine voids any provision in an original mortgage agreement limiting or modifying the right of redemption by payment of the full mortgage debt after default for any reason."); *MacArthur v. North Palm Beach Utilities, Inc.*, 202 So.2d 181, 188 (Fla.1967) ("A mortgagor cannot, by any agreement made contemporaneously with or as a part of the mortgage transaction, bind himself not to assert his right or equity of redemption . . . .") (citation omitted); *Hamud v. Hawthorne*, 52 Cal.2d 78, 338 P.2d 387, 390 (1959) (" 'Transfers of mortgaged properties by mortgagors to mortgagees for the purpose of avoiding foreclosure proceedings . . . have not been uncommon occurrences . . . [and] have been held valid by the courts where the transactions were fair and honest . . .' [but only where] an original loan contract was first entered into providing for a note secured by a deed of trust or mortgage and, *after* default in payment, the parties entered into a *separate, distinct* and *subsequent* contract which provided for the conveyance of the subject property to the mortgagee or beneficiary . . . ." (quoting *Bastajian v. Brown*, 57 Cal.App.2d 910, 135 P.2d 374, 377 (1943))); *Pollak v. Millsap*, 219 Ala. 273, 122 So. 16, 20–22 (1928) (holding that transaction involving loan of money se-

cured by deed is enforceable as mortgage, not a conditional sale); *Humble Oil & Ref. Co. v. Doerr,* 123 N.J.Super. 530, 303 A.2d 898, 905 (Ch.Div.1973) ("For centuries it has been the rule that a mortgagor's equity of redemption cannot be clogged and that he cannot, as a part of the original mortgage transaction, cut off or surrender his right to redeem. Any agreement which does so is void and [unenforceable] as against public policy."); 4 Pomeroy, Equity Jurisprudence § 1193 (5th ed. 1941) ("Once a mortgage, [a]lways a [m]ortgage."). In the end, clogging the equity of redemption is prohibited.

■ Most importantly, for this case, under Maryland statutory law and Virginia common law, a deed in lieu of foreclosure executed as security *at the time of loan origination* is a mortgage, not an absolute conveyance, *regardless* of whether the deed purports on its face to be absolute. Foreclosure proceedings in the present case, therefore, must have been initiated before Ministries' interest in the Property could have been extinguished.

Accordingly, because Ministries has properly stated a cause of action for damages from breach of contract, we shall vacate the judgment of the Circuit Court for Montgomery County and remand for further proceedings on that action.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY VACATED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT IN-CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**